**Grace PHILLIPS**

v.

**The UNITED STATES.**

**No. 641–84C.**

United States Claims Court.

Oct. 29, 1986.

Steven M. Angel, Oklahoma City, Okl., attorney of record for plaintiff.

Richard W. Oehler, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. Capt. William O. Ashcraft, Office of the Judge Advocate Gen., Dept. of the Air Force, of counsel.

## OPINION

YOCK, Judge.

This action arises from the plaintiff's claim for overtime pay pursuant to 5 U.S.C. § 5542 (1982). Defendant has now filed a Motion to Dismiss on the ground that this Court lacks jurisdiction because the collective bargaining agreement between the Air Force and the union, which represents plaintiff, established the exclusive and mandatory means for resolving disputes such as plaintiff's overtime pay claim. Alternatively, defendant contends that jurisdiction is lacking because plaintiff has failed to exhaust her administrative remedies when she did not utilize the grievance and arbitration procedures established by the collective bargaining agreement.

For the reasons discussed herein, defendant's motion is granted and the complaint is to be dismissed.

### Facts

Plaintiff is a civilian employee of the Department of the Air Force employed at Randolph Air Force Base, San Antonio, Texas. Her position as a secretary/stenographer (GS–05) involves the performance of various secretarial and administrative tasks. Plaintiff alleges that she is entitled to overtime pay pursuant to 5 U.S.C. § 5542 (1982) because she was authorized, directed and required to work in excess of eight hours per day from 1980 until December 5, 1984,[1] but has not received payment for such work as required by law.[2]

---

1. Plaintiff asserts that she worked some 3700 hours of overtime, for which she has received no compensation. She alleges that she would arrive at work between one and two hours early and work during this period, as well as work during her lunch period on each of these days. Plaintiff also alleges, and for the purposes of this discussion, the Court will assume, that the additional work performed by plaintiff was done at the order, instruction, approval, and authorization of her immediate supervisor.

2. Section 5542 of Title 5 reads in pertinent part:

"(a) For full-time, * * * hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or * * * in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, * * * at the following rates:

"(1) For an employee whose basic pay is at a rate which does not exceed the minimum rate of basic pay for GS–10, the overtime hours rate of pay is an amount equal to one and one-half times the hourly rate of basic

On January 22, 1981, the Air Force and the union, which represents plaintiff in this case, entered into a collective bargaining agreement. This agreement defines a grievance as any complaint "[b]y any bargaining unit employee concerning *any* matter relating to the employment of the bargaining unit employee." Negotiated Agreement between Randolph Air Force Base, Texas, and Local 1840 American Federation of Government Employees, Art. 12 § B(1)(a) (January 22, 1981) ("Agreement") (emphasis supplied). Additionally, Article 12, § A of the Agreement states:

> This Article shall be the *exclusive procedure* available to the parties of this agreement and employees in the bargaining unit *for resolution of grievances* that are subject to the control of the employer. These procedures shall be applicable to any matter involving working conditions, or any matter involving the interpretation or violation of this agreement, except for exclusions contained in C below.[3]

Agreement, Art. 12, § A (emphasis supplied). The Agreement applies to "all permanent full-time employees * * * with the exception of supervisory and managerial personnel * * *." Agreement, Art. 2, § B. Plaintiff has occupied and continues to occupy a position identified by the Agreement and therefore is subject to its provisions. Plaintiff has never filed a grievance concerning the overtime claim that is the subject of this action.

Plaintiff's claim was filed in this Court on December 5, 1984. Defendant's Motion to Dismiss was filed on December 10, 1985.

### Discussion

In its motion, defendant contends that this Court lacks jurisdiction to decide plaintiff's claim. It supports this contention by pointing to the collective bargaining agreement in force between the Air Force and the federal employee union, to which the plaintiff belongs and which represents her in this action, which established a mandatory grievance and arbitration procedure. Defendant argues that this procedure is the *exclusive* means for resolving disputes such as plaintiff's overtime claim. While review of arbitrators' decisions by a federal court of appeals is permitted in limited circumstances, the defendant asserts that the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101–35 (1982) (CSRA) does not afford either the union or an individual employee the right to bring a suit in the United States Claims Court over matters which are subject to the mandatory or exclusive grievance and arbitration provisions of a collective bargaining agreement. Alternatively, defendant argues that plaintiff's failure to exhaust her administrative remedies under the contractual grievance procedures precludes this Court from exercising jurisdiction over plaintiff's action.

Plaintiff counters the defendant's assertions by arguing that the provisions of the collective bargaining agreement do not provide the sole or exclusive means for resolving disputes arising from the federal civilian employment relationship. Plaintiff contends that an employee may process an overtime pay claim as a grievance or as a separate claim in this Court. Plaintiff asserts that her claim in this Court for overtime pay pursuant to 5 U.S.C. § 5542, is an independent, statutory remedy. As such, plaintiff contends that her right to maintain this action in this Court exists irrespective of the collective bargaining agreement procedures available to her to vindicate her claim.

As earlier indicated, the Court agrees with the defendant's contentions. Although the issue is a matter of first impression, this Court concludes that it lacks jurisdiction to hear the plaintiff's overtime pay claim under the circumstances present in this case.

Title VII of the Civil Service Reform Act of 1978, Pub.L. No. 95–454 (CSRA) established the rules by which the Federal Government would conduct its labor-

---

pay of the employee, and all that amount is premium pay."

3. The provisions of subsection C are inapplicable to the instant case.

management relations in all dealings with federal employees and organizations representing such employees. 5 U.S.C. § 7101–35 (1982). Congress set out its "findings and purpose" for Title VII in the following words:

(a) The Congress finds that—

(1) *experience in* both private and public *employment indicates that the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them—*

(A) safeguards the public interest,

(B) contributes to the effective conduct of public business, and

(C) *facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment; and*

(2) the public interest demands the highest standards of employee performance and the continued development and implementation of modern and progressive work practices to facilitate and improve employee performance and the efficient accomplishment of the operations of the Government.

Therefore, labor organizations and collective bargaining in the civil service are in the public interest.

(b) *It is the purpose of this chapter to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government.* The provisions of this chapter should be interpreted in a manner consistent with the requirement of an effective and efficient Government.

5 U.S.C. § 7101 (1982) (emphasis supplied).

Congress also set out the rules pertaining to federal employee rights in the following words:

*Each employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of pen-* *alty or reprisal, and each employee shall be protected in the exercise of such right. Except as otherwise provided* under this chapter, *such right includes the right—*

(1) to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities, and

(2) *to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter.*

5 U.S.C. § 7102 (1982) (emphasis supplied).

The CSRA then went on to establish a separate agency, the Federal Labor Relations Authority (FLRA), to enforce these provisions and to oversee labor-management relations in the public sector. *See* 5 U.S.C. §§ 7104, 7105 (1982).

Every collective bargaining agreement must contain procedures for the resolution of grievances raised by bargaining unit employees. 5 U.S.C. § 7121(a)(1) (1982). The CSRA defines a "grievance" as any complaint by an employee or labor organization concerning "any matter relating to the employment of the employee" or any complaint concerning "(i) the effect or interpretation, or a claim of breach, of a collective bargaining agreement; or (ii) any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9) (1982). Union and management may specifically exclude matters from the grievance procedures. However, procedures established in the Agreement are the *exclusive* means for resolving grievances within its coverage. 5 U.S.C. § 7121(a)(1) (1982). Any grievance that is not satisfactorily resolved under the grievance procedures is subject to binding arbitration. 5 U.S.C. § 7121(b)(3)(C) (1982). Exceptions to an arbitration award may be

filed, by either party to the Agreement, with the FLRA. 5 U.S.C. § 7122 (1982).

Judicial review of FLRA decisions is strictly limited by the CSRA. Review in a United States court of appeals is allowed in certain limited circumstances. 5 U.S.C. § 7123 (1982). Nowhere in Title VII of the CSRA is there any indication that a dual right of enforcement exists in the United States Claims Court on any matters that are covered within the mandatory grievance procedures spelled out in a collective bargaining agreement.

The Agreement at issue in the instant case provides:

1. A grievance means any complaint:
   a. By any bargaining unit employee concerning *any* matter relating to the employment of the bargaining unit employee.

   \*    \*    \*    \*    \*    \*

   c. By any bargaining unit employee * * * concerning

   (1) The effect or interpretation or claim of breach of this Agreement, or

   (2) *Any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation effecting conditions of employment.*

Agreement, Art. 12, § B (emphasis supplied). Additionally, the Agreement establishes grievance and arbitration procedures

for resolving disputes that arise under it. These procedures are "the exclusive procedure[s] available to the * * * employees in the bargaining unit for resolution of grievances that are subject to the control of the employer." Agreement, Art. 12, § A.[4]

Finally, Article 16 of the Agreement specifically makes alleged violations concerning overtime pay disputes the subject of a grievance under the Agreement procedures.

Because plaintiff is a member of the bargaining unit and since the resolution of overtime pay disputes was specifically made subject to the *exclusive* grievance procedures enunciated in the Agreement, this Court holds that it is without jurisdiction to decide plaintiff's overtime pay claim. Plaintiff in this case has not lost a right—she has simply lost one avenue which, prior to the passage of Title VII of the CSRA of 1978, was allowed to enforce that right. The plaintiff must utilize the avenue that the CSRA has put in place to determine whether she has a valid overtime pay claim or not. Congress has simply preempted the plaintiff's right, under the factual circumstances in which she finds herself in this action, from invoking this Court's general Tucker Act (28 U.S.C. § 1491 (1982)) jurisdiction.

This result is further supported by the statutory construction of, and legislative

---

4. The Agreement establishes a four step process for the resolution of grievances.

"1. Procedure for employee grievances.

"a. *Informal Grievance Procedure*—An employee of the bargaining unit desiring to file a grievance must first discuss the matter informally with their first level supervisor within 15 calendar days of the date of the management action or occurrence giving use to the grievance or within 15 calendar days of the complainant becoming aware of such action or occurrence. * * *

"b *Formal Grievance Procedure—Step Two:* If the informal discussion or decision at Step 1 fails to resolve the matter, the grievance may be filed within 15 calendar days after receipt of the decision by the employee or a representative designated in writing, with the organizational commander or a comparable level management official (reviewing authority) under which the employee serves. Within 15 calendar days from the receipt of the grievance, a written decision

will be provided the employee. * * * If the employee desires further review, he/she shall within 15 calendar days after receipt of the Reviewing Authority's decision, request review by the Wing Commander who is the final Administrative Authority.

"(1) *Step Three:* A request for review by the Final Administration Authority shall be directed to the Civilian Personnel Officer who will forward it immediately to the Wing Commander for his/her written decision to the employee within 15 calendar days of receipt by the Civilian Personnel Officer, of the request for review.

"(2) *Step Four:* If the grievance is not resolved to the satisfaction of the aggrieved party, the Union may invoke arbitration." Agreement, Art. 12, § F(1).

Moreover, the arbitrator's award is binding on the parties unless appealed. "Either party may file an exception to an award with the Federal Labor Relations Authority." Agreement, Art. 12, § G(6).

history surrounding, the CSRA. First, there is no provision in the CSRA that affords either the union or the aggrieved employee the right to bring suit in the United States Claims Court for matters covered by the grievance procedures of a mandatory collective bargaining agreement. Second, the FLRA was patterned after the private sector's National Labor Relations Board (NLRB).[5] Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, operates as a limited exception to the NLRB's otherwise comprehensive authority, and permits either party to a private sector collective bargaining agreement to bring an action alleging violation of the agreement in a district court. That a similar provision was not included in the CSRA is significant. In fact, a provision analogous to the section 301 exception was proposed but rejected by Congress when the CSRA was enacted. *See Yates v. United States Soldiers' and Airmen's Home*, 533 F.Supp. 461, 463–65 (D.D.C. 1982). Thus, the plaintiff, under the factual circumstances as discussed herein, is limited to her grievance procedure rights to resolve her overtime pay dispute.

Finally, decided case law supports this Court's conclusion. In *Yates v. United States Soldiers' and Airmen's Home, supra,* two federal employees brought actions in the District Court of the District of Columbia seeking intervention and appropriate relief blocking their proposed removal and suspension by their federal management superiors. The District Court, however, dismissed the action for lack of jurisdiction because the employees were covered by a collective bargaining agreement pursuant to the authority contained in the CSRA. The court concluded and held:

> Thus, the Act's enforcement scheme provides no avenue for intervention by district courts. The Congressional rejection of the House version of § 7121(c), which eliminated any means for invoking

district court jurisdiction, makes it clear that Congress intended that disputes involving the interpretation and enforcement of collective bargaining agreements be resolved through the grievance/arbitration machinery, with review "in the first instance by the [FLRA]." H.R.Rep. No. 95–1717, 95th Cong., 2d Sess., 157 (1978). *National Federation of Federal Employees, Local 1263 v. Commandant, Defense Language Institute, supra.* Where, as here, Congress has established a comprehensive scheme for resolving labor disputes without intervention by district courts, we are unwilling to reach for jurisdiction under the guise of deciding a simple contract dispute.

> Moreover, any general basis for invoking this Court's jurisdiction has been preempted by the Act.

> \*　　\*　　\*　　\*　　\*　　\*

> The Court concludes that it lacks jurisdiction over this action.

*Yates v. United States Soldiers' and Airmen's Home, supra,* 533 F.Supp. at 464–65 (footnotes omitted).

Similarly, in *National Federation of Federal Employees, Local 1263 v. Commandant, Defense Language Institute,* 493 F.Supp. 675 (1980), the District Court for the Northern District of California refused to grant an injunction to a union representing federal employees to require the defendant school to bargain over the impact of a proposed employee reduction-in-force. The union's position in the case was that management's refusal to bargain over the impact of a proposed employee reduction-in-force was an unfair labor practice that should be enjoined. Again, the employees at the defense installation were covered by a collective bargaining agreement pursuant to the authority contained in the CSRA. The Court, however, dismissed the case for lack of jurisdiction, stating that:

---

5. "It is intended that unfair labor practice complaints will be handled \* \* \* in a manner essentially identical to [NLRB] practices in the private sector." S.Rep. No. 969, 95th Cong., 2d Sess. 106, *reprinted in* 1978 U.S. Code Cong. & Ad. News 2723, 2828. "[T]he Committee intends that the [FLRA's] role in Federal Labor-Management relations be analogous to that of the [NLRB] in the private sector." H.Rep. No. 1403, 95th Cong. 2d Sess. 41.

In addition to the wide range of functions which Congress has entrusted to the FLRA, the structure of the statutory scheme itself indicates that Congress intended no independent federal court jurisdiction over such matters. The Act explicitly empowers the federal courts to act in three instances. First, it makes judicial review of final orders of the FLRA available only in the appropriate federal circuit courts of appeals. 5 U.S.C. § 7123(a). Second, it provides that the FLRA may petition a circuit court of appeals for enforcement of its orders and for appropriate temporary relief or restraining order. 5 U.S.C. § 7123(b). Third, pursuant to § 7123(d), the FLRA, upon issuing an unfair labor practice complaint, may petition a federal district court for temporary injunctive relief. 5 U.S.C. § 7123(d).

The statutory scheme thus reflects Congressional intention to create an agency to deal with "special requirements and needs of the Government" in the field of labor-management relations and to delegate to that agency a broad range of functions to carry out its task. The statutory scheme further indicates that Congress has provided an explicit, but closely circumscribed, role for the federal courts as outlined in § 7123. The Act read as a whole thus establishes without equivocation the Congressional intent that the statutory procedures be deemed exclusive. *Whitney National Bank, [v. Bank of New Orleans & Trust Co.], supra*, 379 U.S. [411] at 420–22, 85 S.Ct. [551] at 557–58 [13 L.Ed.2d 386 (1965)]. Judicial determination of rights under the Act would be contrary to the expressed desire of Congress to establish special procedures designed to meet special governmental needs, and to give the FLRA responsibility to carry out the purposes of the Act. 5 U.S.C. §§ 7101, 7105(a)(1). Furthermore, the Act also commands that its provisions "should be interpreted in a manner consistent with the requirement of an effective and efficient Government." 5 U.S.C. § 7101(b). In view of the comprehensive scope of the FLRA's duty and authority over labor-management relations in the federal government, it would be inconsistent for the district court to assume jurisdiction over subject matter entrusted to the expertise of the agency.

\* \* \* \* \* \*

This Court's analysis of Title VII of the Act, the legislative history, the Congressional analogies to the role of the NLRB, and the judicial interpretations of the NLRA holding that federal courts lack jurisdiction at the behest of private parties to enjoin alleged unfair labor practices, compels the conclusion that this Court is precluded from entertaining the instant suit.

*National Federation of Federal Employees, Local 1263 v. Commandant, Defense Language Institute, supra*, 493 F.Supp. at 679, 683 (footnotes omitted). *See also United States v. Connolly*, 716 F.2d 882 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). *Cf. Fausto v. United States*, 783 F.2d 1020, *aff'd on reh'g*, 791 F.2d 1554 (Fed.Cir. 1986).

In addition to these two cases that are right on point, another case is instructive. In *National Treasury Employees Union v. Kurtz*, 636 F.2d 411 (1980), the Court of Appeals for the District of Columbia Circuit held that the District Court was correct when it ruled that it *had* jurisdiction over a federal employee reprimand action. There, the employee was covered by a collective bargaining agreement; but the court would not allow its jurisdiction to be invoked where the union had failed to exhaust its administrative remedies when it failed to proceed to completion with the grievance process specified in the collective bargaining agreement. In that case, an IRS employee had received a written reprimand for failing to report a bribery attempt. Although the Circuit Court believed it had jurisdiction (as did the District Court), it is interesting to note that the Circuit Court did not allow the District Court's jurisdiction to be exercised by invoking the exhaustion of administrative

remedies doctrine. This is especially interesting because the defendant in the instant case is arguing in the alternative that even if the Court does not agree with the CSRA preemption argument, the defendant's motion should be granted because the plaintiff has failed to exhaust her administrative remedies. Although the Court strongly believes that the defendant's CSRA preemption argument is the correct one, nevertheless it is clear that *National Treasury Employees Union v. Kurtz, supra,* is also authority for holding that employees and unions that are covered by collective bargaining agreements must first exhaust their administrative remedies before taking their claims to the federal courts.

## CONCLUSION

For the reasons discussed herein, the Court lacks jurisdiction to hear this overtime pay dispute. Defendant's Motion to Dismiss is granted and the plaintiff's complaint is to be dismissed. Each party is to bear its own costs.