**Carl CARTER, et al., Plaintiffs,**

v.

**Lawrence GIBBS, et al., Defendants.**

**No. CV 87–4897–HLH (Tx).**

United States District Court, C.D. California.

Aug. 8, 1988.

Richard Kreisler, Sylvia Kellison, Silver, Kreisler, Goldwasser & Shaeffer, Santa Monica, Cal., Gregory O'Duden, Nat. Treasury Employees Union, Washington, D.C., for plaintiffs.

Brian Kipnis, Asst. U.S. Atty., Los Angeles, Cal., for defendants.

## ORDER DISMISSING ACTION FOR LACK OF SUBJECT MATTER JURISDICTION

HUPP, District Judge.

I

On July 28, 1987 plaintiffs filed this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (FLSA), for recovery of overtime pay. Named plaintiffs are seven Revenue Officers, employed by the Department of Treasury, Internal Revenue Service, at Grades 11 and 12. All are members of the National Treasury and Employees Union, and are subject to a collective bargaining agreement entered into between the union and the government.

Since the complaint has been filed, almost 300 federal employees have opted into the action under the provisions of 29 U.S.C. § 216(b), which allows aggrieved employees to become party plaintiffs by filing written consent forms with the court.

Defendants move to dismiss the complaint pursuant to Rules 12(b)(1) and (3) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and improper venue. This Court holds that the Civil Service Reform Act of 1978 (CSRA) preempts district court jurisdiction over a claim under the Fair Labor Standards Act (FLSA) brought by a federal civil servant

---

represented by a union and working under a collective bargaining agreement, and dismisses the action for lack of subject matter jurisdiction.

## II

### A. CSRA and Exclusivity of the Grievance Procedures.

Congress enacted the CSRA in part to establish a system for resolving grievances of federal civil servants subject to collective bargaining agreements. Collective bargaining agreements between federal employers and unions are required to contain procedures for the settlement of grievances. 5 U.S.C. § 7121(a)(1). All grievances are channeled into the established process, unless of a type specifically excluded by the collective bargaining agreement, or by § 7121(c), (d) or (e). Thus, § 7121(a)(1) states that the grievance "... procedures shall be the exclusive procedures for resolving grievances which fall within its coverage." Section 7103(a)(9) defines a grievance as any complaint:

(A) by any employee concerning any matter relating to the employment of the employee;

.    .    .    .    .

(C) by any employee, labor organization, or agency concerning—

.    .    .    .    .

(ii) any claimed violation, misinterpretation, or misapplication of *any law*, rule, or regulation affecting conditions of employment. (emphasis added)

Thus, unless somewhere else excluded, a FSLA overtime claim is a "grievance."

Section 7121(c) excepts certain claims completely from the grievance procedure (e.g., insurance, retirement, suspension), none of which are applicable here. Subsections (d) and (e) except discrimination claims and certain adverse personnel actions, respectively, and allow an employee the choice of either the grievance procedure or an appeal through the Merit Systems Protection Board or the EEOC. No other exceptions appear in the statute.

In summary, § 7121 requires a collective bargaining agreement to contain grievance procedures. The parties to the agreement may exclude any matter from the grievance procedures. If a matter is not excluded by agreement, it must go through the established grievance process unless of the type specified in subsections (c), (d) or (e), which do not apply in this case.

The parties do not dispute that the overtime claim is a grievance within the above definition, or that the claim is grievable through the collective bargaining agreement. The collective bargaining agreement entered into between the Union and the government does not exclude FLSA matters from operation of the grievance procedures.

On a literal reading of the § 7121, plaintiffs' FLSA rights are within the exclusive jurisdiction of the grievance procedure. An FLSA claim is a grievance within the meaning of the statute, and is not excepted from the exclusive procedures by any subsection of § 7121. Plaintiffs argue, however, that Congress enacted the exclusivity provision in § 7121(a)(1) only to make the grievance procedure exclusive as to matters that would otherwise be appealable through *administrative* procedures. In plaintiffs' view, § 7121(a)(1) did not concern judicial review at all. Plaintiffs are in effect asking the Court to recognize as implied an additional exception to the literal language of the exclusivity provision in § 7121(a)(1).

### B. Legislative History.

Plaintiffs rely on the legislative history of the CSRA to establish that Congress did not intend to preempt a unionized civil servant's FLSA cause of action. They first point to the President's Personnel Management Project report, reprinted in Comm. Print 96–7, 96th Cong., 1st Sess. at 1471, which was in large part the basis of the CSRA. The report suggests that a major concern of the Project was rationalizing the complex web of *administrative* appeal procedures in place at the time of the report. Plaintiffs also note that the Conference Report on the final bill states that:

except for certain specified exceptions, an employee covered by a collective bargaining agreement must follow the negotiated grievance procedures *rather than the agency procedures* available to other employees not covered by an agreement. (emphasis added)

H.R.Rep. No. 1717, 95th Cong., 2d Sess. 157 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 2723, 2891.

Finally, plaintiffs point out that in 1974, Congress amended the FLSA to clarify that it applied to federal workers, and provided that the Civil Service Commission (later the Merit System Protection Board) would administer the act with respect to federal workers. In doing so, Congress explicitly stated in 1974 that the granting of administrative authority to the Commission should "not be construed to affect the right of any employee to prosecute an FLSA claim in court." 29 U.S.C. § 204(f).

These bits of legislative history arguably tend to support plaintiffs' position that the Act was intended to apply only to otherwise administrative matters. Plaintiffs argue that Congress would never have *implicitly* overruled a federal employee's right to judicial enforcement of FLSA rights just three years after affirming that the right exists.

However, there is legislative history more directly to the point which strongly supports defendants' position. The original Senate version of the CSRA considered FLSA claims to be a specific exception to the exclusivity provisions of 7121(a), so that FLSA claims could never be grieved. In the context of the statute as enacted, such an exception would fit in § 7121(c). In Conference, the Senate receded to the House version and did not include FLSA claims as an exception. The original Senate version, deleted in conference, provided that:

(d) A negotiated grievance procedure may cover any matter within the authority of an agency if not inconsistent with the provisions of this chapter, except that it may not include matters involving examination, certification and appointment, suitability, classification, political

activities, retirement, life and health insurance, national security, or the Fair Labor Standards Act of 1938 (29 U.S.C. 201 et seq.).

S.Rep. No. 95–969 95th Cong.2d Sess. 110 (1978), reprinted in U.S.Code Cong. & Admin.News 2723, 2832. Thus, the deletion of the Senate's original version makes clear that FLSA claims are grievable.

Plaintiffs argue that deletion of the Senate version says nothing of whether *judicial* enforcement of the FLSA was intended to be barred—only of whether Congress intended that FLSA claims could be grieved. The Court disagrees. The original Senate version contemplated excluding FLSA claims from the grievance procedures, but Congress decided not to do so. By specifically allowing FLSA claims to become grievable, Congress must have intended that FLSA claims would then be subject to the exclusivity provisions of § 7121(a). There is no clear evidence to suggest that it intended otherwise, and the clear statement in the Act is not ambiguous.

It is of course curious that the Senate would propose that FLSA claims could not be grieved, and then agree to *require* them to be grieved. But the Court cannot assume that Congress blundered when the language of the statute is unambiguous. The Supreme Court has held that the:

starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.

*Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 100 S.Ct 2051, 64 L.Ed.2d 766, 772 (1980). See also *United States v. Gray*, 809 F.2d 579 (9th Cir. 1987). The dispute is whether there is clear legislative intention to the contrary, and the Court finds that there is not. See *Doski v. M. Goldseker Co.*, 539 F.2d 1326, 1332 (4th Cir.1976) (It is not permissible to construe a statute on basis of a mere surmise as to what legislature intended and to assume that it was only by inadvertance that it failed to state something other than what it plainly stated).

### C. Implied Repeal of Statutory Rights.

Plaintiffs argue that Congress could not have intended to extinguish judicial review of an employee's FLSA claim, so soon after affirming that the right existed. Implied repeal of statutory rights are, of course, strongly disfavored. The Supreme Court's most recent interpretation of the CSRA, *United States v. Fausto,* — U.S. —, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), recognized this principle.

This Court does not share plaintiffs' belief that the CSRA impliedly repealed judicial review of a federal employee's FLSA claim. Judicial review is still available for all federal employees not covered by a collective bargaining agreement, and for those employees covered where the collective bargaining agreement excludes FLSA claims from the grievance process. The CSRA did not impliedly repeal any part of the FLSA; it instead created a specific exception to the general enforcement scheme that parties to a collective bargaining are free to eliminate by agreement.

The CSRA "comprehensively overhauled the civil service system." *Lindahl v. OPM,* 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674, 681 (1985). The Court noted in *Fausto* that it "replace[d] the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system, S.Rep. No. 95–969, p. 3 (1978)." 98 L.Ed.2d at 838. Although *Fausto* addressed CSRA preemption in the context of adverse personnel action, Congress undoubtedly had the same streamlining philosophy in mind when formulating the mandatory employee grievance procedures.

The Court finds that the implied repeal language of *Fausto* is not directly relevant. In any event it does not necessarily cut in plaintiffs' direction, as the Court in *Fausto* found an implied repealer of judicial review of determinations under the Back Pay Act.

### D. Case Law.

None of the cases cited by the parties address the issue posed by plaintiffs— whether § 7121(a)(1) is intended to channel only claims that were formerly administrative claims into the grievance procedures. However, in *Phillips v. United States,* 11 Cl.Ct. 155 (1986), the court held that § 7121(a)(1) preempts Claims Court jurisdiction over a unionized civil servant's claim for overtime pay under the Federal Employee Pay Act, 5 U.S.C. § 5542. Prior to the CSRA, a federal employee could sue the United States in federal court for overtime pay under the FEPA, without first going to an agency. *Fox v. U.S.,* 416 F.Supp. 593 (E.D.Va.1976).

Plaintiffs attempt to distinguish *Phillips* arguing that the FEPA, unlike the FLSA, does not provide individual employees with an "express independent" judicial remedy. But as discussed, *supra,* the Court is not convinced by plaintiffs' argument that the CSRA could not have created an implied repeal. Congressional clarity in providing the judicial right of action in FLSA is therefore not of great weight in interpreting the CSRA.

Plaintiffs also rely on several recent Supreme Court decisions for the proposition that Congress did not intend to preempt federal court jurisdiction. In *Barrentine v. Arkansas–Best Freight,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Court addressed the issue of whether mandatory grievance procedures contained in a private sector collective bargaining agreement precludes judicial determination of a FLSA claim. In that case, the Court held that prior submission of a FLSA claim to final and binding arbitration procedures pursuant to a collective bargaining agreement does not bar subsequent suit in federal court, since:

> Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court, and because these congressionally granted FLSA rights are best protected in a judicial rather than in an arbitral forum.

*Id.* 450 U.S. at 745, 101 S.Ct. at 1447, 67 L.Ed.2d at 657. Plaintiffs also cite *Atchison, Topeka and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) for a similar proposition

—that a railway worker's FELA tort suit cannot be barred by the exclusive grievance machinery of the Railway Labor Act.

While the holdings in *Barrentine* and *Buell* recognize the individual nature of certain causes of action, they both involved entirely different (albeit analogous) statutory schemes than the CSRA. This Court finds that the statutory language and legislative history of the CSRA clearly prohibit the individual right of action contemplated in the *Barrentine* and *Buell* cases, unless the parties preserve that right in the collective bargaining agreement. Congress could certainly have found circumstances sufficiently different in the public sector compared to the private sector to warrant nonjudicial resolution of FLSA claims.

E. Consequences of a Decision in Favor of Exclusivity.

Plaintiffs argue that it is very unlikely that Congress intended to eliminate a covered employee's individual right to judicial review of an FLSA claim. After the initial grievance, the union decides whether to take the claim to arbitration or not. After arbitration, an appeal may be taken to an administrative review board, but review stops there.

Congress could well have intended such a result. United States labor policy in this century has encouraged reliance on the collective resolution of individual grievances. Union handling of grievances has for the most part proven fast, efficient and fair. Arbitrators with a specific knowledge of an industry are often better equipped to resolve factual disputes. This is especially true in the context of a FLSA claim, where often, as in this case, hundreds of employees are involved and each employee's case must be decided on the facts of his or her actual job duties. Congress has ample precedent in traditional labor law to relegate a FLSA claim to a union initiated grievance/arbitration process.

Plaintiffs object that the government's position would eliminate their individual right to be in federal court as if the procedure for vindicating the FLSA claim were the most important right. The substantive right itself under the FLSA remains intact. This case involves merely the procedural methods of vindicating that right.

III

The Civil Service Reform Act of 1978 provides an exclusive machinery for resolution of employee grievances. While Congress made certain exceptions to the exclusivity provision contained in 5 U.S.C. § 7121(a), it did not exclude FLSA claims. This Court is unwilling to rewrite an unambiguous statute, and therefore holds in favor of exclusivity. Because the Court dismisses the action for lack of subject matter jurisdiction, it need not consider defendants' arguments that exclusive jurisdiction lies with the Claims Court, or that venue is improper in this district.

The motion to dismiss is granted without leave to amend. The action is dismissed. This is a final order for purposes of Fed.R. Civ.P. 54.

IT IS SO ORDERED.