Carl CARTER, Frank Percina, William E. Dunn, Donald Honaker, Carolyn Hudson, Clara Morrison, Charlene Limenih and Similarly Situated Unnamed Plaintiffs, Plaintiffs–Appellants,

v.

Lawrence GIBBS, James A. Baker III and the United States of America, Defendants–Appellees.

No. 88–1576.

United States Court of Appeals, Federal Circuit.

March 30, 1990.

Certiorari Denied Oct. 1, 1990. See 111 S.Ct. 46.

Gregory O'Duden, Director of Litigation, National Treasury Employees Union, of Washington, D.C., argued for plaintiffs-appellants. With him on the brief were Clinton Wolcott, Asst. Counsel, Lucinda A. Riley, Asst. Counsel and Kerry L. Adams, Asst. Director of Litigation. Michele L. Rusen, of National Treasury Employees Union, of counsel.

Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for defendants-appellees. With him on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Jane W. Vanneman, Attorney, of counsel.

Before MARKEY, Chief Judge, FRIEDMAN, Senior Circuit Judge, and RICH, NIES, NEWMAN, ARCHER, MAYER, MICHEL, and PLAGER, Circuit Judges.

MAYER, Circuit Judge.

## OPINION

This is a rehearing in banc of an appeal from the judgment of the United States District Court for the Central District of California dismissing for lack of subject matter jurisdiction the claims of several hundred Internal Revenue Service revenue officers and tax auditors for overtime pay allegedly due them under the Fair Labor Standards Act of 1938. *Carter v. Gibbs,* 690 F.Supp. 897 (1988). The earlier judgment and opinion of the court, 883 F.2d

1563 (1989), having been vacated, we affirm the judgment of the district court.

### Background

The seven named appellants are revenue officers and tax auditors employed by the Internal Revenue Service (IRS) who have worked a significant amount of overtime since 1981. However, pursuant to section 13 of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 213 (1982), the IRS has determined that these employees are exempt from the FLSA's overtime pay requirements. Therefore, rather than paying appellants for their overtime hours at a rate in accordance with the FLSA, *id.* § 207(a)(1), the IRS pays them either at the rate provided in the Federal Employment Pay Act (FEPA), 5 U.S.C. § 5542(a)(2) (1982), or not at all. Because appellants are in relatively high pay grades, they receive less overtime pay under the FEPA than they would under the FLSA.

As members of the National Treasury Employees Union (union), appellants are covered by the collective bargaining agreement between the union and the IRS. Section 7121(a) of the Civil Service Reform Act of 1978 (CSRA) requires that all such agreements contain grievance procedures. In relevant part, it provides:

> (1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d) and (e) of this section, *the procedures shall be the exclusive procedures for resolving grievances which fall within its coverage.*
> (2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

5 U.S.C. § 7121(a) (1988) (emphasis added).

Subsections (d) and (e) give employees a choice of resolving certain specified types of disputes either through the negotiated grievance procedures or through alternative administrative, and in some cases judicial, channels. The only other exceptions to subsection (a)(1)'s exclusivity provision appear in subsection (c), which excludes from the grievance process altogether disputes falling into one of five specified categories. *See id.* § 7121(c). The parties agree that none of subsections (c), (d), or (e) applies here. They also agree that an overtime pay dispute constitutes a "grievance" within the meaning of section 7103(a)(9) of the CSRA, and that their collective bargaining agreement does not exclude overtime pay disputes from its coverage, pursuant to section 7121(a)(2).

Nevertheless, the seven named appellants sought to resolve their pay disputes in federal district court. They invoked sections 7 and 16(b) of the FLSA, 29 U.S.C. §§ 207, 216(b), and claimed entitlement to allegedly unpaid overtime compensation as well as liquidated damages and attorney fees. As amended, section 16(b) provides:

> Any employer who violates the provisions of section 206 [minimum wage] or section 207 [maximum hours] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.... An action to recover the liability prescribed ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action....

*Id.* § 216(b). Several hundred similarly situated IRS employees subsequently joined the action by filing their written consent with the district court. All complainants alleged that the IRS had improperly determined they were exempt from section 7 of

the FLSA, that they had worked overtime for which they had not been appropriately compensated under the FLSA, and that, therefore, they were entitled to additional overtime pay. They invoked both federal question jurisdiction, 28 U.S.C. § 1331 (1982), and the Little Tucker Act, *id.* § 1346(a)(2), as bases for the district court's jurisdiction.

The government moved to dismiss the suit both for lack of subject matter jurisdiction and for improper venue. It contended that the CSRA provided an exclusive avenue of dispute resolution for federal employees covered by a collective bargaining agreement that did not exempt the disputed matter from its coverage. The government also asserted that even if appellants retained their FLSA section 16(b) right to sue the IRS, the claims of individual employees exceeded the $10,000 jurisdictional limit of the Little Tucker Act.

The district court dismissed the suit on the ground that the CSRA "preempted" the FLSA claims of these employees. 690 F.Supp. at 897. It held that, because the CSRA made grievance procedures contained in collective bargaining agreements the exclusive method of resolving disputes between the parties to those agreements, and because the union and the IRS chose not to exempt overtime pay disputes from their negotiated grievance process, it had no jurisdiction over the disputes. *Id.* at 898. The court also observed that "[j]udicial review is still available for all federal employees not covered by a collective bargaining agreement, and for those employees covered where the collective bargaining

agreement excludes [Fair Labor Standards Act] claims from the grievance process." *Id.* at 900.

Appellants claim that the district court's resolution impermissibly allows the CSRA to repeal by implication their right to sue under the FLSA. They believe they should be free to seek resolution of their overtime pay disputes through the administrative procedures sanctioned by the CSRA, the judicial avenue offered by the FLSA, or both.

## Discussion

The Civil Service Reform Act is unambiguous: "the procedures [set out in the collective bargaining agreement] shall be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1). There is no dispute that overtime claims, premised on an alleged violation of section 7 of the FLSA, 29 U.S.C. § 207, are "grievances" subject to the negotiated procedures. *See* 5 U.S.C. § 7103(a)(9)(C)(ii).[1] It is equally undisputed that the collective bargaining agreement does not exclude these claims from its grievance procedure pursuant to section 7121(a)(2). But appellants say the section 7121(a)(1) exclusivity prescription does not pertain, and accordingly they are entitled to bring suit in district court. There simply is no support for this proposition in either the CSRA or precedent.

## I.

In subsections (d) and (e) of section 7121,[2] Congress specifically identified the

---

1. 5 U.S.C. § 7103(a)(9) provides:
   "grievance" means any complaint—
   (A) by any employee concerning any matter relating to the employment of the employee;
   (B) by any labor organization concerning any matter relating to the employment of any employee; or
   (C) by any employee, labor organization, or agency concerning—
   (i) the effect or interpretation, or a claim of breach, of a collective bargaining agreement; or
   (ii) any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment. . . .

2. The relevant portions of 5 U.S.C. §§ 7121(d) and (e) provide:
   (d) An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title [discrimination] which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. . . .
   (e)(1) Matters covered under sections 4303 [unacceptable performance] and 7512 [disciplinary actions] of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of

grievances for which the negotiated procedures are not exclusive; appellants' overtime claims are not among them. In subsection (c),[3] Congress specified matters that could not be resolved by negotiated procedures; overtime claims are not listed. This absence of an express provision for overtime claims is not the product of congressional inattention to the FLSA. To the contrary, the original Senate version of section 7121(c) expressly included FLSA claims among those matters that could not be grieved. S. 2640, 95th Cong., 2d Sess. § 7221(d) (1978), *reprinted in* 1 Legislative History of the Civil Service Reform act of 1978, at 1832 (1979). But that proviso was removed in conference, and Congress excepted from section 7121(a)(1)'s exclusivity rule only one aspect of the FLSA: the Equal Pay Act, 29 U.S.C. § 206(d), which is now under section 7121(d).

Therefore, appellants premise their argument not on the CSRA or its history but on the principle of statutory construction that "silent repeals of express statutory text are strongly disfavored." Appellants contend that the CSRA cannot be construed as having done implicitly what it did not do explicitly: repeal the judicial access afforded by section 16 of the FLSA, 29 U.S.C. § 216. But adherence to this principle does not advance their cause.

Now, as before the CSRA, federal employees are entitled to recover overtime compensation from the government "in any Federal or State court of competent jurisdiction." *Id.* § 216(b). The effect of Congress' decision to retain the FLSA overtime claims of unionized employees within the ambit of grievable matters, however, is to put them in the administrative rather than the judicial arena unless the parties otherwise agree. *See* 5 U.S.C. § 7121(a)(1), (2). That is, while "the collective bargaining mechanisms created by Title VII [5 U.S.C. § 7101–7904] do not deprive employees of recourse to any of the remedies otherwise provided by statute or regulation," *Karahalios v. National Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, ——, 109 S.Ct. 1282, 1288 (1989), the agreement they negotiate with the government may. *See Harris v. United States*, 841 F.2d 1097, 1099 (Fed.Cir.1988) (where collectively bargained procedures preclude access to the Claims Court, "the issue is not whether anyone's judicial review is foreclosed, but only whether a claimant must pursue one route or another"). Here the union and the IRS committed overtime grievances to the exclusive province of the negotiated procedures.

Properly put, the question here is not whether the CSRA implicitly repealed section 16 of the FLSA; it is whether an additional exception to CSRA section 7121(a)(1)'s exclusivity provision should be implied, an exception allowing review of overtime claims both in the courts and through the negotiated procedures. The answer is no.

## II.

The CSRA "comprehensively overhauled the civil service system." *Lindahl v. OPM*, 470 U.S. 768, 773, 105 S.Ct. 1620, 1624, 84 L.Ed.2d 674 (1985). In view of the "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations," *Bush v. Lucas*, 462 U.S. 367, 388,

---

this title or under the negotiated grievance procedure, but not both. Similar matters which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure, but not both....

**3.** 5 U.S.C. § 7121(c) provides:

The preceding subsections of this section shall not apply with respect to any grievance concerning—

(1) any claimed violation of subchapter III of chapter 73 of this title (relating to prohibited political activities);

(2) retirement, life insurance, or health insurance;

(3) a suspension or removal under section 7532 of this title [*i.e.*, one in the interests of national security];

(4) any examination, certification, or appointment; or

(5) the classification of any position which does not result in the reduction in grade or pay of an employee.

103 S.Ct. 2404, 2417, 76 L.Ed.2d 648 (1983), the Supreme Court has declined to grant federal employees access to the courts beyond that provided in the CSRA itself. Thus in *Bush*, the Court held there was no cause of action for damages under the First Amendment because it is "inappropriate" to "supplement" the "comprehensive procedural and substantive provisions" of the CSRA. *Id.* at 368, 103 S.Ct. at 2406. Likewise in *United States v. Fausto*, 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988), the Court held that the CSRA's "integrated scheme of administrative and judicial review" barred review by the Claims Court of personnel decisions giving rise to claims for back pay. Significantly, the Court thereby foreclosed an avenue to the courts that, pre-CSRA, had been open to federal employees by statute. *Id.* at 451, 108 S.Ct. at 675.

More recently, in *Karahalios* the Court held that, because the CSRA vests the Federal Labor Relations Authority with exclusive authority to enforce a union's statutory duty of fair representation, "a parallel remedy in federal district court" cannot be implied. 489 U.S. at ——, 109 S.Ct. at 1286. Importantly, the Court said that Title VII of the CSRA "provides recourse to the courts in only three instances," and that "[t]o hold that the district courts must entertain such cases in the first instance would seriously undermine what we deem to be the congressional scheme...." *Id.* at ——, ——, 109 S.Ct. at 1286, 1288.

This goes far toward disposing of appellants' claims. In the judicial access provisions of the CSRA, only the Federal Labor Relations Authority can go to federal district court, and then only to petition for "appropriate temporary relief" from an alleged unfair labor practice. *See* 5 U.S.C. § 7123(d). Even where Congress expressly made exceptions to the otherwise exclusive bargained grievance procedures, it only gave federal employees access to appellate judicial review; it did not, in contrast to appellants' proposal, allow de novo trials in the district courts.[4] *See id.* § 7121(d),

(e)(1), (f). Moreover, judicial remedies parallel to administrative ones are nowhere provided. At most, an aggrieved employee may choose statutory procedures or negotiated procedures, "but not both." *See id.* § 7121(d), (e)(1). The point is clear: Congress narrowly circumscribed the role of the judiciary in its carefully crafted civil service scheme.

We have consistently heeded "the Supreme Court's admonitions to leave the architecture of the federal personnel system to Congress." *Volk v. Hobson*, 866 F.2d 1398, 1403 (Fed.Cir.1989). In view of the exclusivity of collectively bargained procedures, we held in *Volk* that an elementary schoolteacher employed by the government could not seek judicial review of her discharge. We also stressed that courts "should abstain completely from inventing other remedies when Congress has set up a complete, integrated statutory scheme." *Id.* at 1402. We therefore concluded that Volk could not sue her superiors in district court for alleged due process violations.

Similarly, in *Carr v. United States*, 864 F.2d 144 (Fed.Cir.1989), we followed the Supreme Court's counsel in *Fausto* and held that the CSRA deprived the Claims Court of jurisdiction to review Carr's removal from federal service. And in *Harris*, although reserving the particular question presented here, we held "the agreed procedure, arbitration, preclusive of other procedures [for resolving differential pay grievances,] and consequently, that resort to the Tucker Act is precluded." 841 F.2d at 1100. Other circuits are in accord. *See Montplaisir v. Leighton*, 875 F.2d 1, 3 (1st Cir.1989), *and cases cited* ("The circuits have been equally as forthcoming; in a variety of settings, they have followed the Court's lead and treated CSRA as establishing the sole mechanism for resolving labor conflicts in the federal arena").

### III.

Appellants' reliance on *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *Barrentine v.*

---

**4.** Recourse to district court may be available after an adverse decision by the Equal Employ-

ment Opportunity Commission. *See* 5 U.S.C. § 7121(d); 42 U.S.C. § 2000e–16(c).

*Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), all dealing with private sector labor disputes, is misplaced. *Karahalios* expressly held that private sector law is not controlling in the context of federal labor controversies. Observing that "federal employment does not rest on contract in the private sector sense," 489 U.S. at —, 109 S.Ct. at 1288, the Court declined to imply a judicial cause of action for union failure to fairly represent federal employees, even though in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), it had done so for those in the private sector.

Distinctive features of the CSRA underlie the Court's rationale in *Karahalios* and are absent from the cases appellants rely upon. While Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, "permits judicial enforcement of private collective bargaining contracts," a comparable provision "for suing an agency in federal court" does not exist in the CSRA. 489 U.S. at —, —, 109 S.Ct. at 1287, 1288. Moreover, the CSRA is unique in prescribing "exclusive" procedures for the resolution of grievances. Indeed, in recognizing a judicial remedy in *Alexander,* the Court pointedly relied on legislative history showing that "the Senate defeated an amendment which would have made Title VII [of the Civil Rights Act of 1964] the exclusive federal remedy for most unlawful employment practices." 415 U.S. at 48 n. 9, 94 S.Ct. at 1020 n. 9.

In holding that bargained grievance procedures do not preclude statutory remedies in the private sector, the Court also has emphasized that rights accorded in private labor-management agreements are separate and distinct from those secured by federal statutes. *See Alexander,* 415 U.S. at 50, 94 S.Ct. at 1020 ("contractual and statutory rights" are of a "distinctly separate nature"); *Barrentine,* 450 U.S. at 745, 101 S.Ct. at 1447 ("the FLSA rights petitioners seek to assert in this action are independent of the collective bargaining process"). Under the CSRA, however, the rights of a unionized federal employee are consolidated within the four corners of the collective agreement: Congress defined a "grievance" to include contractual disputes and "any claimed violation ... of any law." 5 U.S.C. § 7103(a)(9)(C).

## IV.

Appellants argue that a judicial cause of action must obtain because the negotiated grievance process is inferior to, and its results are not as expansive as, the judicial alternative. They say the process is deficient because an arbitrator may be incapable of resolving the legal issues presented in an overtime grievance and the procedures are union-controlled. The administrative remedy is allegedly incomplete because it does not include attorney's fees, liquidated damages, or costs.

In support of the first point, appellants again rely on private sector precedent. *See Barrentine,* 450 U.S. at 743, 101 S.Ct. at 1446. In the public sector, however, it is manifest that Congress intended arbitrators to develop the expertise requisite to the construction and application of federal labor laws. Again, the CSRA expressly defines grievances to include violations of law. 5 U.S.C. § 7103(a)(9)(C). Furthermore, union involvement in the process is in theory if not always in practice a benefit to members rather than a detriment. In any event, it is part of the collective bargain; if the union is derelict in its duties, members have other statutory recourse. *See id.* §§ 7114(a)(1), 7116(b)(8), 7118; *Karahalios,* 489 U.S. at —, 109 S.Ct. at 1285–86.

As to the second point, *Bush* rejected a similar argument. Even assuming "that, as petitioner asserts, civil service remedies were not as effective as an individual damages remedy and did not fully compensate him for the harm he suffered," 462 U.S. at 372, 103 S.Ct. at 2408, it is not our office to supplement the CSRA. *Bush* teaches that because " '[t]he relations between the United States and its employees have presented a myriad of problems with which the Congress over the years has dealt, [and be-

cause g]overnment employment gives rise to policy questions of great import, both to the employees and to the Executive and Legislative Branches,'" 462 U.S. at 379, 103 S.Ct. at 2412 (quoting *United States v. Gilman,* 347 U.S. 507, 509, 74 S.Ct. 695, 696, 98 L.Ed. 898 (1954)), it is for the legislature to define the respective rights and obligations of the government and its employees.

To be sure, Congress has extended the rights and remedies of the FLSA to federal employees. But the CSRA requires that federal employees subject to a collective bargaining agreement negotiate with their employing department or agency whether to preserve the FLSA remedy, or instead to commend FLSA claims to the bargained grievance procedures. By accepting a position covered by the collective bargaining agreement, appellants effectively chose the procedures negotiated by the union. They cannot now assail the sufficiency of those procedures, and we decline their invitation to meddle with the civil service system. *See Patterson v. McLean Credit Union,* 491 U.S. ——, ——, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132 (1989) ("We should be reluctant, however, to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute. *See United States v. Fausto,* 484 U.S. 439 [108 S.Ct. 668, 98 L.Ed.2d 830] (1988)").

### Conclusion

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

FRIEDMAN, Senior Circuit Judge, dissenting.

For the reason given in my opinion for the panel, reported at 883 F.2d 1563, I would reverse the judgment of the district court. To summarize, I conclude that:

1. The holding that the Civil Service Reform Act of 1978 bars government employees covered by a collective bargaining agreement containing a grievance procedure that does not exclude overtime claims under the Fair Labor Standards Act from maintaining a district court suit asserting such claims, constitutes a *pro tanto* repeal of the right given government employees to maintain such a suit in the district court. This is so because it "eliminates the right to sue previously granted by another federal statute." 883 F.2d at 1566. As the Supreme Court frequently has stated, most recently in *United States v. Fausto,* 484 U.S. 439, 452, 108 S.Ct. 668, 676, 98 L.Ed.2d 830 (1988), "repeals by implication are strongly disfavored," are "not favored," or are "disfavored." See the cases cited, 883 F.2d at 1566.

2. Since Congress had given government employees the right to sue under the Fair Labor Standards Act only in 1974, four years before it enacted the Civil Service Reform Act, "one would think that if Congress had intended the Reform Act to take away that right for the substantial number of federal employees covered by collective bargaining agreements, it would expressly have so provided or stated." *Id.* at 1567. There is nothing in the language or the legislative history of the Reform Act expressly showing that Congress so intended.

3. In *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court held that a provision in a collective bargaining agreement requiring that "any controversy" between the parties be resolved through the binding grievance procedure under the contract, did not bar employees covered by the contract, who unsuccessfully had invoked the grievance procedure to assert claims based upon violations of the Fair Labor Standards Act, from maintaining an action in the district court asserting those claims. Although *Barrentine* is distinguishable because it involved solely a collective bargaining agreement and did not involve the impact of the Civil Service Reform Act upon the Fair Labor Standards Act, the reasoning of the Supreme Court is equally applicable to the present situation and calls for the same result here.

My views are developed in considerable detail in the panel opinion, and there is no

occasion to repeat them here. In my opinion, the "exclusivity" provision of the Reform Act cannot properly be applied to bar the appellants from maintaining a district court action alleging violations of the Fair Labor Standards Act.