William **BRAMMER**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 312–89C.

United States Claims Court.

Nov. 21, 1991.

Gerald Goldman, Chicago, Ill., for plaintiff.

Richard P. Nockett, Washington, D.C., with whom were Asst. Atty. Gen., Stuart M. Gerson, Director David M. Cohen, and Asst. Director Jeanne E. Davidson, for defendant.

## OPINION

ROBINSON, Judge:

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. Plaintiff, William Brammer, seeks reimbursement for moving expenses in the amount of $22,152.16 plus interest and costs,[1] and maintains that jurisdiction is present under 28 U.S.C. § 1491. Defendant contends that under the Civil Service Reform Act (CSRA), 5 U.S.C. § 7101, *et seq.*, plaintiff's exclusive means for resolving this claim is through the negotiated grievance procedures in the collective bargaining agreements to which plaintiff was subject during the relevant dates. For the reasons which follow, defendant's motion to dismiss is granted.

1. Recovery claimed according to the Department of Defense Manual 1400.20–1–M, Ch. 2, ¶ F.

2. Naval Lodge 1630 of the International Association of Machinists and Aerospace Workers, AFL–CIO, was the exclusive representative of the bargaining unit which included boiler plant operators employed at NAS Cecil. Because of his employment as a boiler plant operator, plaintiff was a member of the bargaining unit represented by Naval Air Lodge 1630 and was covered by the NAS Cecil Agreement. The fact

## FACTUAL BACKGROUND

In 1987, plaintiff was employed by the Department of the Navy (Navy) as a boiler plant operator at the Naval Air Station (NAS), Cecil Field, Florida (NAS Cecil). While plaintiff was employed at NAS Cecil, he was covered by a collective bargaining agreement between NAS Cecil and the International Association of Machinists and Aerospace Workers, AFL–CIO, Naval Air Lodge 1630 (NAS Cecil Agreement), which was in effect from January 15, 1982 until June 16, 1988.[2]

On November 2, 1987, plaintiff received notice that his position was being eliminated as a result of a Reduction–In–Force (RIF). On that same date, plaintiff was advised by Mr. Bruce Stevens, a Civilian Personnel Specialist at NAS Cecil, that his moving expenses would be paid if he was able to find another position at a Department of Defense (DoD) facility.

Prior to the effective date of his separation, December 4, 1987, plaintiff applied for an available position as a boiler plant equipment mechanic at the NAS in Glenview, Illinois (NAS Glenview). Plaintiff was offered the position at NAS Glenview on November 13, 1987. On November 16, 1987, plaintiff was advised by Mr. Jeff Neil, a Personnel Specialist at the Civilian Personnel Office (CPO), that NAS Cecil would not reimburse him for his relocation expenses. Plaintiff then talked to Mr. John Hensley, a Personnel Staffing Specialist at NAS Glenview, who informed him that NAS Glenview could pay for the move and get reimbursed by NAS Cecil. On November 21, 1987, Mr. Hensley informed plaintiff that NAS Glenview would not pay his moving expenses. Plaintiff accepted NAS Glenview's offer on November 25,

that plaintiff did not pay union dues and was not aware that he was part of a bargaining unit does not affect his membership status. *See* Declaration of Judith B. Garrard, Director of the Labor Relations Division of the Consolidated Civilian Personnel Office (CCPO), NAS, Jacksonville, Florida. Defendant's Supplemental Appendix to Defendant's Reply Brief, p. 13. Furthermore, plaintiff's counsel conceded at the July 18, 1991 oral argument that plaintiff "was by law a member of the [NAS Cecil] collective bargaining agreement". Transcript p. 38.

1987. Upon commencing employment on December 6, 1987, plaintiff immediately became covered by the terms of a collective bargaining agreement between NAS Glenview and Local 1641 of the American Federation of Government Employees (AFGE).[3]

After commencing his employment at NAS Glenview, plaintiff submitted a request for reimbursement to NAS Cecil. That request was denied by NAS Cecil's commanding officer in May 1988. Plaintiff was then advised by Ms. Shirley Abil, a Staffing Specialist from the Naval Personnel Office, that he must pursue his claim for reimbursement through the DoD Zone Coordinator's Office. Pursuant to plaintiff's appeal filed with that office, Mr. Gene Pollard, Deputy DoD Zone Coordinator, concluded that the payment of travel and transportation expenses involved in plaintiff's move to NAS Glenview "must be paid." Plaintiff's Response to Defendant's Motion to Dismiss, Exhibit B, p. 3. However, the commanding officer at NAS Cecil, upon reconsideration, ignored Deputy DoD Zone Coordinator Pollard's preliminary decision and in a final decision denied plaintiff's request on January 4, 1989. Plaintiff instituted this suit on June 2, 1989.

## Contentions of the Parties

In support of its motion to dismiss for lack of subject matter jurisdiction, defendant relies on 5 U.S.C. § 7121(a) to argue that the negotiated grievance procedures in both the NAS Cecil and NAS Glenview agreements provide the exclusive means for resolving claims for reimbursement of moving expenses. Plaintiff counters that he was not required to file a grievance through the negotiated grievance procedures because moving expenses were not covered by either the NAS Cecil or the NAS Glenview bargaining agreements.

## DISCUSSION

■ For the purposes of a motion to dismiss for lack of subject matter jurisdiction pursuant to RUSCC 12(b)(1), the burden is on plaintiff to establish jurisdiction. *Metzger, Shadyac & Schwartz v. United States*, 10 Cl.Ct. 107, 109 (1986). However, in resolving such a motion the court must accept as true any undisputed allegations of fact made by plaintiff.[4] *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In this case, even accepting as true plaintiff's factual allegations, the court is without jurisdiction to hear plaintiff's claim for moving expenses.

5 U.S.C. § 7121(a) provides that:

(1) [A]ny collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d) and (e) of this section, the procedures shall be the exclusive procedures for resolving grievances which fall within its coverage.

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

■ As defendant correctly points out, both the United States Court of Appeals for the Federal Circuit (Federal Circuit) and the United States Claims Court (Claims Court) have consistently held that this provision precludes the federal courts from entertaining the claims of federal employ-

---

**3.** AFGE Local 1641 was the exclusive representative of the bargaining unit which included boiler plant operators and boiler plant equipment mechanics employed at NAS Glenview. Because of his employment as a boiler plant equipment mechanic, plaintiff was a member of the bargaining unit represented by AFGE Local 1641 and was covered by the NAS Glenview Agreement. *See* Declaration of Jack N. Powell, Supervisory Labor Relations Specialist, Department of the Navy, CCPO, Great Lakes, Illinois. Appendix to Defendant's Motion to Dismiss, p. 71.

**4.** Where there are disputed facts relevant to the issue of jurisdiction, the court may consider pertinent evidence in order to resolve such disputes. *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 747 (Fed.Cir.1988); *Hedman v. United States*, 15 Cl.Ct. 304, 306 (1988). In this matter, there are no disputed facts which require resolution in order to decide the merits of defendant's motion.

ees that fall within the scope of the grievance procedures of a collective bargaining agreement. *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.1990) (*en banc*), *cert. denied,* — U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990); *Amos v. United States,* 22 Cl.Ct. 724 (1991); *Aamodt v. United States,* 22 Cl.Ct. 716 (1991). Therefore, the primary issue before the court is the applicability of 5 U.S.C. § 7121(a) in this case.

▮ In *Bonner v. Merit Systems Protection Board,* 781 F.2d 202 (Fed.Cir.1986), (employee reassigned by RIF) the Federal Circuit outlined a two-part test. That court first asked whether the subject of the complaint was a "matter" within the meaning of 5 U.S.C. § 7121. Simply stated, the *Bonner* court looked to whether plaintiff's claim was covered by the applicable collective bargaining agreement. Secondly, it asked whether the subject of the complaint was excluded from the application of the negotiated grievance procedure. *Bonner v. Merit Systems Protection Board,* 781 F.2d 202, 204 (Fed.Cir.1986). In this case, the court must determine whether the payment of relocation expenses was within the purview of 5 U.S.C. § 7121(a) and the relevant collective bargaining agreements, and then, whether those expenses were excepted from the application of such collective bargaining agreements.

With respect to the first prong of the *Bonner* test, plaintiff contends that his claim for moving expenses is not covered by either the NAS Cecil or the NAS Glenview collective bargaining agreements and, therefore, is not a "matter" within 5 U.S.C. § 7121(a). To support this contention, plaintiff first notes that the 6th Circuit has held that wages and other compensation matters with regard to federal employees are not conditions of employment and, therefore, fall outside the duty to bargain under 5 U.S.C. §§ 7101–7135. *Ft. Knox Dependent Schools v. Federal Labor Relations Authority,* 875 F.2d 1179, 1181 (6th

Cir.1989), *vacated Federal Labor Relations Authority v. Ft. Knox Dependent Schools,* — U.S. ——, 110 S.Ct. 2580, 110 L.Ed.2d 261 (1990); *see also Department of Defense Dependents Schools v. Federal Labor Relations Authority,* 863 F.2d 988, 990 (D.C.Cir.1988) (conditions of employment do not include wages), *vacated en banc* 911 F.2d 743 (D.C.Cir.1990); and *Overseas Education Asso. v. Federal Labor Relations Authority,* 858 F.2d 769 (D.C.Cir.1988) (travel benefits and educational opportunities for active unit employees were held to be conditions of employment, but only by virtue of the unique nature of the employment).[5]

Plaintiff also contends that reimbursement for moving expenses is an element of compensation and, therefore, is not a condition of employment. If reimbursement of such expenses is not a condition of employment, then plaintiff had no duty to bargain about it under the CSRA. Accordingly, plaintiff's claim would not be covered by either of the two relevant collective bargaining agreements unless the unions and the Naval facilities actually agreed to bargain over the reimbursement of moving expenses. Because neither agreement contains any provision for moving expenses, plaintiff concludes that such expenses were never bargained over and, therefore, were outside the scope of the NAS Cecil and the NAS Glenview collective bargaining agreements.

In further support of plaintiff's position that his claim for moving expenses is not covered by the relevant collective bargaining agreements, plaintiff maintains that he properly exhausted his administrative remedies by filing his claim through the DoD Office of the Zone Coordinator. He directs the court's attention to DoD 1400.20–1–M which was promulgated to, *inter alia,* expedite the placement of employees affected by a RIF. DoD 1400.20–1–M, Chapter 1, Part A. Part B(6) of that chapter provides

---

**5.** Both *Department of Defense Dependents Schools* and *Ft. Knox Dependent Schools* were vacated in light of the Supreme Court's decision in *Ft. Stewart Schools v. Federal Labor Relations Authority,* 495 U.S. 641, 110 S.Ct. 2043, 109 L.Ed.2d 659 (1990) (affirmed the 11th Circuit's

decision that schools owned and operated by the Army at a military facility were required to bargain with the teachers' union over proposals relating to mileage reimbursement, various types of paid leave, and a salary increase).

that the Zone Coordinators shall be responsible for the resolution of employees' disputes involving qualifications and other program matters, for the development of policy and procedural guidance and for the investigation and correction of violations of DoD policies. The correction of DoD violations includes directing the restoration of pay, allowances and differentials as set forth in 5 CFR, Part 550, §§ 550.801–04.[6] Because a dispute over plaintiff's claim for expenses would involve the restoration of pay, allowances and differentials,[7] plaintiff argues that it is within the purview of the Zone Coordinator's responsibilities. Plaintiff concludes that because the NAS Cecil agreement does not specifically include moving expenses, and because DoD 1400.-20–1–M does indicate that the DoD Office of the Zone Coordinator is an appropriate forum, the court should find that the issue of moving expenses was never intended to be subject to any grievance procedure.

Without reaching the issue of whether reimbursement for relocation expenses is a type of compensation, and despite the apparent appropriateness of bringing a claim for moving expenses before the DoD Office of the Zone Coordinator, the court cannot agree with plaintiff that his claim is not covered by the relevant collective bargaining agreements. The applicable agreements in this case, the NAS Cecil agreement and the NAS Glenview agreement, enumerate in Article 32 and Article 22, respectively, the negotiated grievance procedures available to covered employees. Both Articles broadly define a grievance as any complaint concerning any matter relating to the employment of an employee, or concerning any violation, misinterpretation or misapplication of any law, rule, or regulation affecting conditions of employment.[8]

■ Plaintiff contends that his grievance did not relate to his employment at NAS Cecil, but was related strictly to his appointment at NAS Glenview. However, the undisputed facts show that this contention is unavailing. Both plaintiff's request for authorization from NAS Cecil for the payment of his moving expenses and NAS Cecil's subsequent denial of such authoriza-

6. DoD 1400.20–1–M, Chapter 1, Part B(6) sets forth the following as responsibilities of the Zone Coordinators:
(f) Resolve disputes of employees' qualifications and other program matters, including providing assistance in resolving employee complaints;
(g) Develop policy and procedural guidance and resolve problems related thereto;
(h) Investigate and direct corrective action on any noncompliance or violation of DoD policies. This includes the responsibility to direct placements and restoration of pay, allowances, and differential, as set forth in 5 CFR, Part 550, Sections 550.801 through 550.804.

7. Section 550.803 defines "pay, allowances and differentials" as monetary and employment benefits to which an employee is entitled to by statute or regulation. The applicable regulation in this case is DoD 1400.20–1–M, Chapter 2, Part F(1) which provides for the payment of transportation expenses by the releasing activity when an involuntarily separated employee is reassigned to a position at another DoD activity.

8. Although Article 32 of the NAS Cecil agreement and Article 22 of the NAS Glenview agreement do not use identical language, they contain essentially the same definition of a covered grievance. Article 32 of the NAS Cecil agreement provides:

NEGOTIATED GRIEVANCE PROCEDURE
*Section 1.* The EMPLOYER and the UNION agree that this Article is to provide an orderly and the sole procedure for the processing and settlement of Unit employee grievances.
A grievance means any complaint—
a. by any Unit employee concerning any matter relating to the employment of the employee;
b. by the UNION concerning any matter relating to the employment of any Unit employee; or
c. by any Unit employee, the UNION, or the EMPLOYER concerning:
(1) the effect or interpretation, or a claim of breach of a collective bargaining Agreement between the Parties; or
(2) any claim violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment;
d. except that it shall not include a grievance concerning:
(1) any claimed violation relating to prohibited political activities; or
(2) retirement, life insurance, or health insurance; or
(3) a suspension or removal for national security reasons; or
(4) any examination, certification, or appointment; or

tion, occurred prior to plaintiff's employment at NAS Glenview and while plaintiff was still an employee at NAS Cecil. Thus, since plaintiff's claim arose solely out of his request for payment authorization and NAS Cecil's subsequent denial of that request, that claim is directly related to his employment at NAS Cecil. Given the fact that plaintiff was advised by a personnel specialist at the CPO, before he accepted the job at NAS Glenview, that NAS Cecil would not pay his relocation expenses, NAS Cecil's denial of the request for authorization was clearly a *fait accompli* before plaintiff ever set foot at NAS Glenview.

In the alternative, if plaintiff's claim was not related to his employment at NAS Cecil, it necessarily was encompassed by Section 1(c)(2) of Article 32 which includes as a grievance any complaint concerning a violation, misinterpretation or misapplication of a regulation affecting conditions of employment.[9] Plaintiff's own argument that NAS Cecil's failure to reimburse him for his moving expenses constituted a violation of the relevant DoD regulations, DoD Manual 1400.20–1–M, supports the finding that plaintiff's claim was covered by Section 1(c)(2) of Article 32.[10] This determination is further bolstered by the fact that the conclusions of the DoD Zone Coordinator's Office were contrary to the NAS Cecil commanding officer's interpretation of regulation 1400.20–1–M.[11] Because plaintiff's dispute with NAS Cecil involved an alleged violation or, at the very least, an alleged misinterpretation of regulation 1400.20–1–M that affected his employment, plaintiff's grievance clearly was encompassed by the negotiated grievance procedures in the NAS Cecil agreement.

Were the court to find that plaintiff's claim was not covered by the NAS Cecil agreement, but by the NAS Glenview agreement, plaintiff could have filed a grievance under the negotiated grievance procedures outlined in Article 22 of the NAS Glenview agreement. As noted above, plaintiff argues that his grievance was related strictly to his appointment at NAS Glenview. He further argues that it was excluded from the NAS Glenview agreement because rather than being transferred from NAS Cecil, he was appointed to his position at NAS Glenview. In support of this argument plaintiff directs the court's attention to 5 U.S.C. § 7121(c)(4), which provides that 5 U.S.C. § 7121(a) and (b) do not apply to a grievance concerning any appointment, and Article 22, § 3(d) of the NAS Glenview agreement which provides that Article 22 does not apply to a grievance concerning any appointment.[12]

■ Although plaintiff was required to fill out a Declaration of Appointee form, plaintiff's employment with NAS Glenview is not considered an appointment for purposes of 5 U.S.C. § 7121(c)(4) and Article 22, § 3(d). The exclusion of appointments pursuant to Article 22, § 3(d) of the NAS Glenview agreement pertains to grievances concerning the initial hiring of an employee. Because plaintiff did not become employed at NAS Glenview as a newly hired employee of the Navy and, in fact, voluntarily relocated to NAS Glenview after being employed by the Navy for many years, his relocation is considered a reassignment and § 3(d) of Article 22 is not applicable to his claim.[13] Furthermore, plaintiff's Standard Form 50–B, NOTIFICATION OF PERSONNEL ACTION, which he did not contest, clearly states in Box 18–B, Nature of Action, that plaintiff's employment with NAS Glenview was a reassignment. In sum, because plaintiff was not a newly hired employee with the Navy and was simply reassigned to a different NAS, he

---

(5) the classification of any position which does not result in the reduction in grade or pay of an employee.

**9.** The definition of a grievance is stated in the alternative. *See* footnote 8.

**10.** Plaintiff's Response to Defendant's Motion to Dismiss at p. 4.

**11.** *See* Plaintiff's Response to Defendant's Motion to Dismiss, Exhibits B and C.

**12.** *See* footnote 8.

**13.** *See* Declaration of Jack N. Powell, Supervisory Labor Relations Specialist, Department of the Navy, CCPO, Great Lakes, Illinois. Supplemental Appendix to Defendant's Reply Brief, pp. 17–18.

was not appointed to his position at NAS Glenview and 5 U.S.C. § 7121(c)(4) and Article 22, § 3(d) of the NAS Glenview agreement do not apply to his claim.

Having determined that plaintiff's claim was covered by the NAS Cecil or, alternatively, by the NAS Glenview collective bargaining agreement, the court turns to the second prong of the *Bonner* test and holds that plaintiff's expenses were not excepted from the application of either of these two collective bargaining agreements. While 5 U.S.C. § 7121(a) provides, generally, that the exclusive means for resolving claims encompassed by a collective bargaining agreement is its negotiated grievance procedures, 5 U.S.C. § 7121 also allows for some exceptions. 5 U.S.C. § 7121(d) and (e), for example, both allow an aggrieved employee the option of bringing a claim under either the negotiated grievance procedures or another applicable procedure.[14]

5 U.S.C. § 7121(c) excludes entirely from the negotiated grievance procedures any claim which falls into any one of five enumerated groups. The only category that plaintiff raises as an excluded category is 5 U.S.C. § 7121(c)(4), grievances concerning any examination, certification, or appointment, which has been discussed in detail above. Therefore, all remaining categories, those in 5 U.S.C. § 7121(c)(1), (2), (3) and (5), are also not relevant in this suit.

■ Additionally, 5 U.S.C. § 7121(a)(2) provides that the collective bargaining agreement itself may exclude any type of grievance from its grievance procedures. Plaintiff does not dispute, and the court holds, that neither the NAS Cecil agreement nor the NAS Glenview agreement addresses, much less provides for, the exclusion of relocation expense claims from its grievance procedures.[15] Accordingly,

because plaintiff's claim was covered by one or the other of the relevant agreements, and because the subject of the complaint was not excluded from the application of the specified negotiated grievance procedures, the court finds that 5 U.S.C. § 7121(a) is applicable and acts to preclude the court from entertaining plaintiff's suit.

■ In a further attempt to avoid the jurisdictional bar of 5 U.S.C. § 7121(a), plaintiff finally argues that he was not an employee at NAS Cecil at the time he could have appropriately filed his claim through the negotiated grievance procedures. He maintains that the NAS Cecil agreement is limited to employees occupying positions at NAS Cecil. Because his employment had been terminated at the time he discovered that the commanding officer's denial of reimbursement for his moving expenses was in violation of DoD regulations, he contends that he could not have filed a complaint through the NAS Cecil agreement procedures. To reach this conclusion, plaintiff relies on *Beall v. United States*, 22 Cl.Ct. 59 (1990). In *Beall*, the court refused to dismiss the complaints of two plaintiffs, whose claims were subject to a collective bargaining agreement, because they were no longer employed at the same facility when they filed their respective complaints. Since issuing that decision, the court reconsidered the matter and concluded that its prior ruling was in error. In its April 5, 1991 Order, issued contemporaneously with its decision in *Aamodt v. United States*, 22 Cl.Ct. 716 (1991), the court adopted its reasoning in *Aamodt* and dismissed the claims of those former bargaining unit members. *Beall v. United States*, Cl.Ct. No. 676–89C (April 5, 1991) (Bruggink, J.). In *Aamodt*, the court held that it lacked jurisdiction over employees who

---

**14.** 5 U.S.C. § 7121(d) allows an employee affected by a prohibited personnel practice under § 2302(b)(1) of this title to raise the matter under a statutory procedure. 5 U.S.C. § 7121(e) provides that matters covered under §§ 4303 and 7512 of this title may also be raised under the appellate procedures of § 7701 of this title. Neither 5 U.S.C. § 7121(d) nor (e) are applicable in this matter.

**15.** *See* Declaration of Judith B. Garrard, Director of the Labor Relations Division of the Consolidated Civilian Personnel Office (CCPO), NAS, Jacksonville, Florida. Defendant's Appendix to Plaintiff's Response to Defendant's Motion to Dismiss, p. 11, and Declaration of Jack N. Powell, Supervisory Labor Relations Specialist, Department of the Navy, CCPO, Great Lakes, Illinois. Appendix to Defendant's Motion to Dismiss, p. 71.

were former members of bargaining units, and for whom a grievance process was available when their claims arose. The court concluded in *Aamodt* that the employee's bargaining unit status at the time of the alleged grievance determines whether the employee is covered by a collective bargaining agreement and its grievance procedures. *Aamodt v. United States*, 22 Cl.Ct. 716, 720 (1991). This court finds the *Aamodt* decision persuasive.[16] In this case, the court is of the view that plaintiff's claim accrued when NAS Cecil notified plaintiff that it would refuse to authorize payment of his moving expenses, even though this was only a very brief time prior to plaintiff's reassignment and commencement of employment at Glenview. Because plaintiff was still an employee at NAS Cecil at that time, he could have filed a complaint through the NAS Cecil agreement procedures which, as demonstrated above, were available to him.[17] Accordingly, the court finds that plaintiff's contentions are insufficient to avoid the jurisdictional bar of 5 U.S.C. § 7121(a).

## CONCLUSION

■ The court recognizes that plaintiff can no longer bring its grievance under either the NAS Cecil agreement or the NAS Glenview agreement and, therefore, that a dismissal of plaintiff's suit for lack of jurisdiction will effectively deny plaintiff the opportunity to ever present its case on the merits. The court also recognizes that, while the plaintiff must ultimately be held responsible for his inaction in not determining his rights under the applicable collec-

tive bargaining agreement and seeking the proper avenues of recourse in this case, defendant's initial advice to plaintiff was, at best, confusing, and partly responsible for creating what facially appears to have resulted in an inequity—a denial of any appellate review on the merits of the commanding officer's decision. However, the directive to this court by the Federal Circuit is clear. The federal courts "should abstain completely from inventing other remedies when Congress has set up a complete, integrated statutory scheme." *Carter v. Gibbs*, 909 F.2d 1452, 1456 (Fed.Cir. 1990) (*en banc*), *cert. denied*, —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990)[18] (*quoting Volk v. Hobson*, 866 F.2d 1398, 1403 (Fed.Cir.1989)). *See also Amos v. United States*, 22 Cl.Ct. 724 (1991); *Aamodt v. United States*, 22 Cl.Ct. 716 (1991); *Ackerman v. United States*, 21 Cl.Ct. 484 (1990); *Riggs v. United States*, 21 Cl.Ct. 664 (1990). Under the CSRA, Congress mandated that the negotiated grievance procedures, as set forth in the applicable collective bargaining agreement, shall be the exclusive procedures for claims such as the plaintiff's request for reimbursement in this case.

Accordingly, for the reasons expressed above, the court grants defendant's motion to dismiss the plaintiff's claim for lack of jurisdiction upon the ground that plaintiff's claim arose while he was an employee at NAS Cecil, that the negotiated grievance procedures (whether he knew about them or not) were available to him under the terms of the NAS Cecil collective bargaining agreement, and that, notwithstanding

---

**16.** This court also adopted the *Aamodt* reasoning in an earlier decision in *Amos v. United States*, Cl.Ct. No. 666–81C (August 29, 1991 Order) (Robinson, J.).

**17.** Under Article 32 of the NAS Cecil agreement, plaintiff could have submitted a grievance within fifteen (15) calendar days of November 21, 1987, the date that plaintiff became aware that his expenses would not be paid by either NAS Cecil or NAS Glenview. *See* Declaration of Judith B. Garrard, Director of the Labor Relations Division of the Consolidated Civilian Personnel Office (CCPO), NAS, Jacksonville, Florida. Defendant's Supplemental Appendix to Defendant's Reply Brief, p. 14.

**18.** In *Carter*, the Federal Circuit held that employees who were covered by a collective bargaining agreement that did not specifically exclude overtime pay disputes from its grievance procedures, were precluded from maintaining suit. Under the CSRA, the rights of unionized federal employees "are consolidated within the four corners" of the relevant collective bargaining agreement. *Carter v. Gibbs*, 909 F.2d 1452, 1457 (Fed.Cir.) (*en banc*), *cert. denied*, —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). *Carter* does differ from the *Bonner* case and this case in that both parties agreed that the claim constituted a "grievance" under the meaning of that term in the CSRA.

his subsequent transfer to NAS Glenview, those procedures provided the exclusive means for resolving plaintiff's claim. In the alternative, if the court is in error in its finding as to the applicability of the NAS Cecil negotiated grievance procedures, it concludes that NAS Glenview provided a similar grievance procedure to resolve plaintiff's claim, which would, in any event, require dismissal without prejudice of plaintiff's claim.

The Clerk of the Court is directed to dismiss plaintiff's claim without prejudice for lack of subject matter jurisdiction. No costs.