**Eddie J. ADAMS, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 749–88C.

United States Claims Court.

May 31, 1990.

Michael J. Tedesco, Portland, Or., for plaintiffs.

Hillary A. Stern, Washington, D.C., with whom were Asst. Atty. Gen., Stuart M. Gerson, Director David M. Cohen, and Asst. Director Stephen J. McHale, for defendant.

## OPINION

LYDON, Senior Judge:

This case is before the court on the government's motions to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, pursuant to RUSCC 12(b)(1), and to suspend proceedings in this suit pending resolution of the motion to dismiss, or in the alternative, for an enlargement of time in which to respond to plaintiffs' motion for summary judgment.

■ Plaintiffs are 288 present and former prevailing rate employees of the North Pacific Division of the United States Army Corps of Engineers (Corps).[1] Plaintiffs filed a complaint in this court on December 28, 1988, seeking premium pay plus interest, retroactive to May 29, 1983, pursuant to § 5343 of the Prevailing Rate Systems Act of 1972 (prevailing rate act), 5 U.S.C. §§ 5341–49 (1988), which is part of the Federal Wage System, 5 U.S.C. §§ 5301 *et seq.*[2] On October 31, 1989, plaintiffs filed a motion for summary judgment on the issue of liability. The government thereafter filed the present motion to dismiss for lack of jurisdiction on January 29, 1990. Oral argument was held on May 21, 1990. Defendant has not, as yet, responded to plaintiffs' motion for summary judgment.

The government's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction is premised on the argument that plaintiffs' exclusive remedy for their pay claims is confined to the terms of their union's collective bargaining agreement. Plaintiffs oppose the motion to dismiss, contending that their pay claims cannot be resolved through the grievance procedure of the collective bargaining agreement.

Plaintiffs' pay claims under the prevailing rate act include environmental hazard pay (§ 5343(c)(4), seniority pay (§ 5343(e)), and night shift differential pay (§ 5343(f)). Plaintiffs refer to all three of these pay claims as "premium pay" to distinguish them from "base wages" determined through wage surveys, which plaintiffs

1. The concept of the federal "prevailing rate" pay system is based on the policy that "rates of pay of prevailing rate employees be fixed and adjusted from time to time as nearly as is consistent with the public interest and be based on principles that ... the level of rates of pay will be maintained in line with prevailing levels for comparable work [in private industry] within a local wage area...." 5 U.S.C. §§ 5341, 5343 (1988).

2. Plaintiff's complaint also seeks injunctive relief in the form of an order directing the Department of Defense Wage Fixing Authority (DODWFA) to cease violating the requirements of 5 U.S.C. § 5343. This court has no jurisdiction to grant injunctive or declaratory relief, however, except as conferred by statute. *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1963); *Berdick v. United States*, 222 Ct.Cl. 94, 100, 612 F.2d 533, 536 (1979); *Curry v. United States*, 221 Ct.Cl. 741, 747, 609 F.2d 980, 983 (1979).

now assert they do not seek, although their complaint as filed seeks recovery for "[A]ll unpaid wages...."

## FACTS

The Federal Wage System, Pub.L. No. 92–392, was implemented in 1972, and it provides generally for federal blue collar workers to be paid wages comparable to wages paid for similar positions in the private sector. *See* 5 U.S.C. § 5343; S.Rep. No. 791, 92d Cong., 2d Sess. 2, *reprinted in* 1972 U.S.CODE CONG. & ADMIN. NEWS 2980, 2981–82. During the 1970's, plaintiffs' wages were determined under the Federal Wage System. In 1979, Congress capped the wages of most federal employees, including those in the Federal Wage System. Certain employees of the Department of the Interior (DOI) and the Department of Energy (DOE) were allowed to continue to bargain their wages, however, with the result that, by 1982, DOI and DOE employees were earning higher base wages than similarly situated Corps employees. To rectify the situation, Congress passed the Supplemental Appropriations Act of 1982 (the 1982 amendment), amending 5 U.S.C. § 5343 of the CSRA.[3] The 1982 amendment provided that wages of Corps employees would no longer be determined by surveying private sector wages, but rather by surveying comparable DOI and DOE positions.[4]

The 1982 amendment authorized the Department of Defense Wage Fixing Authority (DODWFA) to set Corps employees' wages.[5] The DODWFA apparently interpreted the 1982 amendment as removing Corps employees from the Federal Wage System, and thereby authorizing the DODWFA to alter not only the method of computing base wages, but the method of computing premium pay as well.

Plaintiffs contend that the DODWFA has incorrectly interpreted the 1982 amendment as removing Corps employees from the Federal Wage System. Plaintiffs argue that the purpose and effect of the 1982 amendment was not to remove Corps employees from the Federal Wage System, but rather to remove the 1979 pay cap on base wages, and thereby restore parity between base wages of Corps employees and

3. The legislative history of the 1982 amendment reflects congressional recognition of the pay disparity problem:

> The Committee has been informed that certain Corps of Engineers power plant operational personnel are paid less than personnel of other agencies doing comparable jobs in nearby locations. The Committee believes that all Federal employees should receive comparable compensation for performing comparable work. Therefore, the Committee has included a provision in the Bill that would remove the inequity.

H.R.Rep. No. 673, 97th Cong., 2d Sess. 83 (1982).

4. The 1982 amendment reads as follows:

> Without regard to any other provision of law limiting the amounts payable to prevailing wage rate employees, United States Army Corps of Engineers employees paid form Corps of Engineers Special Power Rate Schedules shall be paid, beginning the effective date of each annual wage survey in the region after the date of enactment of the Act, wages as determined by the Department of Defense Wage Fixing Authority to be consistent with the wages of the Department of Energy and Department of the Interior employees performing similar work in the corresponding area whose rates are established in accordance with Section 9(b) of Public Law 92–392 or Section 704 of Public Law 95–454.

5. Defendant submitted to the court a letter from the Department of Defense describing the impact of the 1982 amendment on Corps employees' wages:

> Corps of Engineers employees each [received] a raise in base pay of over $4,900 per annum, a 19% increase. Holiday premium pay was increased to 300%. This placed the Corps of Engineers employees on an equal pay basis with employees who were in the Department of Energy and Interior performing similar work. Similarly, shift differential for the Corps of Engineers employees was discontinued because employees in the other two agencies were not paid a differential for shift work. Adding shift differential to the increases granted by [the Supplemental Appropriations Act] would cause the Corps of Engineers employees to be paid from 7.5 to 10% above counterpart employees in Energy and Interior, *i.e.*, the pay inequities [, to which the 1982 amendment was directed,] would be recreated.

> It would appear from this letter that Corps employees did receive some degree of premium pay albeit it was not severable as such when their pay structure was reconstructed as a result of the 1982 amendment.

base wages of DOI and DOE employees performing similar work. Plaintiffs insist that their interpretation of the 1982 amendment signifies that plaintiffs are still entitled to receive premium pay as set by statute under 5 U.S.C. § 5343.

The parties agree that during all times relevant to their complaint, plaintiffs are or were members of a union, the United Power Trades Organization (the Union). The Union and the Corps were parties to consecutive collective bargaining agreements executed in 1982, 1985, and 1988, each agreement lasting three years. These agreements were negotiated pursuant to the Federal Service Labor–Management Relations statute (FSLMR), 5 U.S.C. §§ 7101–7135 (1988), which is part of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 7101 *et seq.*[6]

Article 6 of the 1988 collective bargaining agreement currently in force states that "[b]oth parties to this Agreement have the responsibility of conducting their negotiations in good faith and otherwise in such a manner as will further the purpose of Title VII, Civil Service Reform Act of 1978 (CSRA)...." Title VII of the CSRA "established the rules by which the Federal Government would conduct its labor management relations in all dealings with federal employees and organizations representing such employees." *Phillips v. United States*, 11 Cl.Ct. 155, 156 (1986).

Article 6 also provides, in section 6.2, that "[s]ubjects appropriate for negotiations are conditions of employment, as defined in Section 7103(a)(14) of Title VII, CSRA." Section 7103(a)(14) defines "conditions of employment" as "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions...." 5 U.S.C. § 7103(a)(14).

Article 17 of the current (1988) collective bargaining agreement governs the grievance procedure. Nowhere in Article 17 or elsewhere in the provisions of the collective bargaining agreement is the term "grievance" defined, but section 17.3 excludes, *inter alia,* the following matters from the scope of the grievance procedure: "Questions involving application of published agency policies, provisions of law, regulations of the Department of the Army Corps of Engineers or regulations of appropriate authorities outside the Department of the Army shall not be subject to the grievance procedure."[7]

Section 17.3 of Article 17 also states that this grievance procedure "shall be the exclusive procedure for resolving complaints included in its coverage." This section further provides that "[n]othing provided for in this Article shall restrain employees who have a right of action in State or Federal Court which does not require the exhaustion of a grievance procedure."

The 1982 collective bargaining agreement specifically provided, in Articles 19 and 20 respectively, that Corps employees were entitled to receive, *inter alia,* shift differential pay and environmental hazard pay, which are two of plaintiffs' three pay claims. As a result of the 1982 amendment, however, the provisions for shift differential and environmental pay do not appear in the 1985 or the 1988 versions of the collective bargaining agreement. It should be noted, however, that neither of these pay matters is specifically excluded from the grievance procedure in the 1985 or the 1988 collective bargaining agreements. *See Carter v. Gibbs,* 909 F.2d 1452, 1455 (Fed.Cir.1990) *(en banc).*

On behalf of plaintiffs, the Union has tried to resolve the premium pay claims at issue here through the grievance procedure

---

6. Section 7121(a) of the CSRA requires that all collective bargaining agreements contain grievance procedures, and that such procedures "shall be the exclusive procedures for resolving grievances that fall within its coverage." This section further provides that "[a]ny collective bargaining agreement may exclude any matter from the application of the grievance proce-

dures which are provided for in the agreement." 5 U.S.C. § 7121(a).

7. The above-quoted provision is from the 1988 collective bargaining agreement. Section 17.3 of the 1982 agreement contained slightly broader language: "Questions involving *interpretation or* application of published Agency policies, provisions of law...." (emphasis added).

of the collective bargaining agreement. In 1986, the Union filed a grievance against the Corps when the Corps stopped paying night shift differential to Corps employees. The Corps appealed the arbitrator's decision that the Corps had violated the terms of the collective bargaining agreement by discontinuing payment of night shift differential. The Corps' appeal to the Federal Labor Relations Authority (FLRA) resulted in the FLRA setting aside the arbitrator's award, on the basis that the 1982 amendment required Corps employees to be paid wages consistent with wages paid to DOI and DOE employees. Since the DODWFA had determined through wage surveys that DOI and DOE employees were not paid a shift differential, the FLRA concluded that the 1982 amendment prohibited the payment of shift differential to Corps employees. *See* 21 FLRA 66 (1986).

In 1987, the Union appealed the negotiability of shift differential, premium pay and environmental pay before the FLRA, which are the three pay claims at issue here.[8] The FLRA concluded that the 1982 amendment prohibited payment of the premium pay sought by plaintiffs, *i.e.,* shift differentials, premium pay (presumably seniority pay) and environmental pay, and therefore such premium pay matters were outside the duty to bargain and not negotiable since they are contrary to law. *See* 30 FLRA 77 (1987).

## DISCUSSION

◼ In support of its motion to dismiss, the government contends that plaintiffs' claims are "pay matters," which are not excluded from the grievance procedure under Section 17.3. The government argues that, because "pay matters" are not excluded from the grievance procedure, plaintiffs' pay claims must be resolved exclusively through the grievance procedure, and therefore the court lacks jurisdiction over plaintiffs' complaint. The government supports this point by citing § 7121(a)(1) of the CSRA, which states that where a collective

bargaining agreement provides for grievance procedures, "the procedures shall be the exclusive remedy for resolving grievances which fall within its coverage."

The government also cites two cases in which the Federal Circuit has held that § 7121(a)(1), the exclusive remedy provision of the CSRA, precludes any remedy other than the grievance procedure for resolving grievances that arise under collective bargaining agreements that govern labor-management relations between federal employers and federal employees' unions. *Carter, supra,* 909 F.2d at 1458; *Harris v. United States,* 841 F.2d 1097, 1100 (Fed. Cir.1988). The government relies heavily on *Carter* and *Harris,* and also cites two Claims Court cases that followed *Harris'* rationale, to support its position that plaintiffs' complaint should be dismissed for lack of jurisdiction. *See Adkins v. United States,* 16 Cl.Ct. 294 (1989); *Fahy v. United States,* 14 Cl.Ct. 470, *aff'd,* 864 F.2d 148 (Fed.Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989).

Plaintiffs characterize their complaint as seeking judicial review of the DODWFA's interpretation of the 1982 amendment, which amended 5 U.S.C. § 5343, the provision of the prevailing rate act under which plaintiffs' pay claims are brought. Plaintiffs allege that the DODWFA has improperly interpreted the 1982 amendment as removing Corps employees from the Federal Wage System. Plaintiffs contend that DODWFA's actions in eliminating premium pay for Corps employees are contrary to the statutorily mandated pay rates set forth in 5 U.S.C. § 5343. Plaintiffs also challenge the DODWFA's actions in failing to follow the rulemaking requirements of the Administrative Procedures Act (APA), 5 U.S.C. §§ 551 *et seq.,* in establishing wage-setting procedures. 5 U.S.C. § 553. Plaintiffs argue that, even if the DODWFA has correctly interpreted the 1982 amendment as removing Corps employees from

---

**8.** Plaintiffs characterize seniority pay, as well as shift differential and environmental pay, as "premium pay" in their reply brief, and the court will treat seniority pay as premium pay for the purposes of this motion to dismiss. See Plaintiff's Response to Defendant's Motion to Dismiss, at 1.

the Federal Wage System, the DODWFA has violated the APA rulemaking requirements in setting premium pay rates. Plaintiffs seek premium pay retroactive to May 29, 1983, and they also seek an injunction to stop the DODWFA from violating the requirements of 5 U.S.C. § 5343. *See supra* note 2.

Plaintiffs challenge the government's argument that plaintiffs' exclusive remedy for their pay claims lies within the grievance procedure of plaintiffs' collective bargaining agreement. Plaintiffs advance two reasons why their pay claims fall outside the scope of the grievance procedure. First, plaintiffs argue that the government fails to recognize that a fairly broad range of matters are excluded from the grievance procedure: "Questions involving application of published agency policies, provisions of law, regulations of the Department of the Army Corps of Engineers or regulations or appropriate authorities outside the Department of the Army shall not be subject to the grievance procedure." Plaintiffs contend that it would not be unreasonable to read their complaint as raising, *inter alia,* a question involving the application of a provision of law, *i.e.,* the application of the prevailing rate act, 5 U.S.C. §§ 5341–49, and the 1982 amendment thereto.

Second, plaintiffs contend that since 1983, the Corps has consistently refused to bargain premium pay rates, and they cite 1986 and 1987 Federal Labor Relations Authority (FLRA) rulings which, plaintiffs claim, indicate that night shift and environmental pay rates cannot be bargained. Plaintiffs argue that, since premium pay rates are set by statute and cannot be bargained, their pay claims are outside the scope of the collective bargaining agreement, and are not subject to the grievance procedure.

Defendant's motion to dismiss plaintiffs' complaint for lack of jurisdiction raises the issues of whether plaintiffs' pay claims are subject to the grievance procedure of the collective bargaining agreement, and if so, whether the avenue of relief available through the grievance procedure forecloses judicial review of these pay claims. These issues can best be resolved by an analysis of relevant case law. *Harris* and *Carter* are two recent cases in which the Federal Circuit has struggled with the issue of whether the CSRA precludes judicial review of pay claims that are found to fall within the scope of the grievance procedure of a collective bargaining agreement.

I

In *Harris, supra,* the Federal Circuit addressed the issue of whether a federal employee was precluded, by the terms of his union's collective bargaining agreement, from bringing his environmental differential pay (EDP) claim in federal district court. The EDP claim was premised on § 5343(c) of the prevailing rate act, as is plaintiffs' environmental hazard pay claim here. The parties in *Harris* agreed that environmental differential pay is an issue "suitable for collective bargaining." *Harris, supra,* 841 F.2d at 1100. The *Harris* court found that EDP claims are not excluded from the grievance procedure of the collective bargaining agreement, and therefore § 7121(a)(1) of the CSRA provides that the grievance procedure is the exclusive remedy for such grievable claims. Although Harris argued that, prior to the CSRA, the Tucker Act provided a remedy for a prevailing rate employee's EDP claims, and that repeals by implication are not favored, the court rejected plaintiff's argument and held that the CSRA operates to repeal by implication the preexisting Tucker Act remedy, and to divest the district court of jurisdiction to consider plaintiff's EDP claim. The court based its decision in large part on the Supreme Court's reasoning in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), which interpreted the comprehensive scheme of the CSRA as establishing Congress' intention to foreclose judicial review of adverse personnel actions for certain categories of federal employees, even though such a remedy had been previously available in the Claims Court under the Tucker Act. *Fausto, supra,* 484 U.S. at 448, 108 S.Ct. at 673.

On March 30, 1990, the Federal Circuit, sitting *en banc,* reversed a prior panel decision in *Carter v. Gibbs,* 883 F.2d 1563 (Fed.Cir.1989). Before reversal, *Carter* held that federal employees could bring overtime pay claims, under §§ 7 and 16(b) of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 213, either through the grievance procedure of a collective bargaining agreement or in federal court. In reversing itself, the court noted that the parties agreed that plaintiffs' overtime pay claims were not excluded from the grievance procedure of the collective bargaining agreement. The court concluded that § 7121(a)(1), the CSRA's exclusivity provision, precluded plaintiffs from obtaining judicial review of their FLSA overtime claims. Their exclusive remedy, the Federal Circuit held, resides in the grievance procedure of their union's collective bargaining agreement. As in *Harris,* plaintiffs' argument that repeals by implication are disfavored was rejected by the Federal Circuit; the court restated the question as "whether an additional exception to CSRA section 7121(a)(1)'s exclusivity provision should be implied [,]" and the court emphasized that "[t]he answer is no." *Carter, supra,* 909 F.2d at 1455.

Taking note of the Supreme Court's reasoning in *Fausto, supra,* the Federal Circuit in *Carter* found that the CSRA's " 'integrated scheme of administrative and judicial review' " compelled the conclusion that no exception to the CSRA's exclusivity procedure be implied. *Carter, supra,* 1455 (quoting *Fausto, supra,* 484 U.S. at 445, 108 S.Ct. at 672). In reaching this conclusion, the court turned to a recent Supreme Court decision, *Karahalios v. National Federation of Federal Employees,* 489 U.S. 527, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989). Citing *Karahalios* and *Harris,* the Federal Circuit observed that "while 'the collective bargaining mechanisms created by Title VII [of the CSRA] do not deprive employees of recourse to any of the remedies otherwise provided by statute or regulation,' ... the agreement they negotiate with the government may." *Carter, supra,* 1455, quoting *Karahalios, supra,* 489

U.S. at ——, 109 S.Ct. at 1288 (citation omitted).

In analyzing the statutory scheme of the CSRA, the Federal Circuit in *Carter* noted that:

> [e]ven where Congress expressly made exceptions to the otherwise exclusive bargained grievance procedures, [in § 7121(d), (e)(1), (f) of the CSRA] it only gave federal employees access to appellate judicial review; it did not ... allow de novo trials in the district courts.... Moreover, judicial remedies parallel to administrative ones are nowhere provided. At most, an aggrieved employee may choose statutory procedures or negotiated procedures, "but not both."

*Carter, supra,* at 1456. The court reasoned that "[b]ecause the CSRA vests the Federal Labor Relations Authority with exclusive authority to enforce a Union's statutory duty of fair representation, 'a parallel remedy in federal district court' cannot be implied." *Carter, supra,* at 1456, quoting *Karahalios, supra,* 489 U.S. at ——, 109 S.Ct. at 1286. Furthermore, the Federal Circuit noted that

> [i]n the judicial access provisions of the CSRA [§ 7123(d) ], only the Federal Labor Relations Authority can go to federal district court, and then only to petition for "appropriate temporary relief" from an unfair labor practice.... Even where Congress expressly made exceptions to the otherwise exclusive bargained grievance procedures, it only gave federal employees access to appellate judicial review; it did not ... allow de novo trials in the district courts.

*Carter, supra,* at 1456.

In this case, as the government points out, in light of the *en banc* decision in *Carter,* plaintiffs' attempt to distinguish *Harris* on two bases, one, that it involved a "local, fact-specific issue," and two, that the parties in *Harris* agreed that EDP was a suitable topic for collective bargaining, is misplaced. The government also discounts plaintiffs' reliance on *Gahagan v. United States,* 19 Cl.Ct. 168 (1989), which held that when a federal employee is seeking judicial resolution of his premium pay claim

through judicial enforcement of a nation-wide federal law, his claim will be considered by the court, even though it was subject to a purportedly "exclusive" grievance procedure under a collective bargaining agreement. *Gahagan, supra,* 19 Cl.Ct. at 174. The court in *Gahagan* relied heavily on the *Carter* decision as it stood before the *en banc* reversal. *Gahagan* distinguished *Harris* on the basis that the EDP claim in *Harris* involved local wage standards that did not apply to federal employees nationwide, as did the premium pay claims in *Gahagan.* Plaintiffs concede in their supplemental brief that the Federal Circuit largely overruled *Gahagan* in reversing Carter. Plaintiffs insist, however, that *Carter,* as reversed, does not prevent plaintiffs from seeking judicial review of their non-grievable pay claims.

## II

The *Carter* decision also undermines plaintiffs' position that their pay claims are outside the scope of the grievance procedure by contending that they have tried to resolve their night shift and environmental differential pay grievances through the grievance procedure of their union's collective bargaining agreement, but the FLRA ultimately ruled that such pay rates were set by statute and were not bargainable. Plaintiffs cite two FLRA decisions, 21 FLRA 66 (1986) and 30 FLRA 77 (1987), which have been discussed *supra.* Plaintiffs emphasized at oral argument that,

since these pay rates cannot be bargained, their pay claims fall outside the scope of the collective bargaining agreement, and therefore they cannot be subject to the grievance procedure.[9]

As the government pointed out at oral argument, a distinction must be drawn between "grievability" and "negotiability." The court agrees with defendant that *Carter* stands for the proposition that, with regard to pay matters of the type at issue here, if such pay matters are not specifically excluded from the grievance procedure by the terms of the collective bargaining agreement, they are "grievances" within the meaning of 5 U.S.C. § 7103(a)(9) of the CSRA, and are therefore subject to resolution exclusively through the grievance procedure, even though the grievance procedure has resulted in a determination that the pay matters in dispute are non-negotiable. Stated another way, merely because employees are unsuccessful in their grievance endeavors does not, *per se,* entitle them to bring suit in this court.[10]

In this case, plaintiffs' pay claims are not specifically excluded from the grievance procedure under Article 17 of the collective bargaining agreement, and therefore the claims are "grievances" within § 7103(a)(9) of the CSRA. Accordingly, the exclusivity provision of the CSRA, § 7121(a)(1), provides that the grievance procedure is the exclusive remedy for resolving plaintiffs' pay claims. *See Carter, supra,* at ———— ———.

9. Plaintiffs' counsel expressed concern at oral argument that, if *Carter* stands for the proposition that non-negotiable subjects of dispute are nonetheless exclusively confined to the grievance procedure, such a result would disturb and undermine many years of well-settled labor law principles governing labor agreements between private parties. While the court appreciates plaintiffs' position, at the same time the court recognizes that labor relations between the government and its employees are subject to congressional mandate, and therefore a useful analogy cannot always be drawn between the public and private sectors. Moreover, the court is cognizant of the fact that public sector labor law, including the FLSA, is currently experiencing "growing pains" not unlike the development of private sector labor law, including the National Labor Relations Board, that has taken place in the past fifty years.

10. Section 7103(a)(9) of the CSRA defines "grievance" as follows:

"[G]rievance" means any complaint—
(A) by any employee concerning any matter relating to the employment of the employee;
(B) by any labor organization concerning any matter relating to the employment of any employee; or
(C) by any employee, labor organization, or agency concerning—
  (i) the effect or interpretation, or a claim of breach, of a collective bargaining agreement; or
  (ii) any claimed violation, misinterpretation, or misapplication of any law, rule or regulation affecting conditions of employment[.]

5 U.S.C. § 7103(a)(9).

Plaintiffs admit that they have attempted to resolve their premium pay claims through the grievance procedure, citing the 1986 and 1987 FLRA decisions, *supra.* Plaintiffs argue, however, that since their pay claims were ruled non-negotiable by the FLRA, their pay claims are not within the duty to bargain, and are therefore outside the scope of the grievance procedure, and outside the scope of *Carter.*

Although plaintiffs' argument is not without logic, and plaintiffs' suggest said argument is based upon principles of labor law governing private sector labor relations, such suggestions, are not always analogous to public sector labor relations, as the public sector is subject to other considerations involving the broad public interest, congressional and statutory concerns, etc. *See supra* note 9. The court feels that *Carter* represents a significant continuation of a trend in this area of the law, and accepts the Federal Circuit's decision as controlling law with regard to the principle that, so long as plaintiffs have an avenue available in which to proceed on their pay claims, which they clearly do under the grievance procedure, that route is the exclusive forum and judicial review is foreclosed, even though the pay claims are ultimately found to be non-negotiable, as they were here. Although this may appear to be a route without a remedy in this instance, the court feels the decision herein is constant with the holdings of the *Harris* and *Carter* cases, *supra.*

In their recent supplemental brief, plaintiffs' attempt to distinguish *Carter,* as reversed, is misplaced. Plaintiffs argue that *Carter* is distinguishable from this case because in *Carter,* the issue was whether plaintiffs had the option of pursuing their FLSA pay claims in district court, in addition to, or instead of, pursuing a remedy through the grievance procedure, and the court ruled that the grievance procedure provided the exclusive remedy. Plaintiffs argue that this case is different because unlike *Carter,* the parties here do not agree that plaintiffs' pay claims are a "grievance" under the grievance procedure. More correctly, it should be noted plaintiffs do not agree but defendant does

agree that *Carter* has significant impact on this case. Moreover, it is difficult not to view the matter as a grievance when plaintiffs took the matter through the grievance procedure to the highest administrative level. The court does not read the Federal Circuit's holding in its *en banc* reversal of *Carter* as turning on the fact that the parties agreed that plaintiffs' pay claims were grievable under the grievance procedure. Plaintiffs' attempt to distinguish *Carter* is, in essence, merely a reiteration of their argument that their pay claims are not subject to the grievance procedure. As discussed above, that issue has been resolved against them.

Although not cited by the government, the Claims Court's decision in *Skirlick v. United States,* 17 Cl.Ct. 735 (1989), *aff'd without opinion,* 904 F.2d 45 (Fed.Cir. 1990), also supports the court's conclusion that it lacks jurisdiction to consider plaintiffs' pay claims. In *Skirlick,* the court followed the *Harris* rationale in holding that an air traffic controller's claim against the FAA for failure to transfer union dues, contrary to the terms of the collective bargaining agreement, was not subject to Claims Court jurisdiction, since the employee had failed to pursue what the court found to be his exclusive remedy under the grievance procedure of his union's collective bargaining agreement. *Skirlick, supra,* 17 Cl.Ct. at 740–41.

## CONCLUSION

In view of the foregoing discussion, the court finds that, under the trilogy of cases relied on above, *i.e., Harris, Carter* as reversed *en banc,* and *Skirlick,* as affirmed without opinion, this court has no jurisdiction to hear plaintiffs' premium pay claims. The trilogy of cases all involved different factual situations, yet they all had one constant, the presence and availability of a collective bargaining agreement to resolve the grievance on which the claims were premised. That factor, present in this case, persuades the court that the holdings of the above trilogy of cases must be followed, as these cases reflect the current trend in this area of the law.

For the reasons set forth above, defendant's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction is hereby GRANTED. No costs.