**John A. ACKERMAN, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 674–89C.

United States Claims Court.

Oct. 2, 1990.

Richard J. Hirn, Washington, D.C., for plaintiffs.

Mark H. Duesenberg, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and Stephen J. McHale, Washington, D.C., for defendant. Myrrel C. Hendricks, Office of General Counsel, Dept. of Commerce, Washington, D.C.

## OPINION

BRUGGINK, Judge,

This case is before the court on the Government's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. Defendant contends that the plaintiffs' exclusive method for resolving overtime pay disputes under the Fair Labor Standards Act is the grievance procedure of their union's collective bargaining agreement. The issue is whether, in the circumstances of this case, the relevant collective bargaining agreements exclude from their purview overtime pay disputes. After considering the parties' written and oral arguments, the court concludes that the collective bargaining agreements do not specifically exclude plaintiffs' overtime pay dis-

putes. Thus, the defendant's motion to dismiss is granted.

## FACTUAL BACKGROUND

John A. Ackerman and 26 others who have filed their written consent to be party plaintiffs in accordance with 29 U.S.C. § 216(b) (1988) are employed as GS–11 electronics technicians by the National Weather Service ("NWS"). NWS is a component of the National Oceanic and Atmospheric Administration (NOAA), an agency of the Department of Commerce. Plaintiffs are employees within the meaning of section 7(a) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. The original complaint was filed on December 14, 1989. On April 18, 1990, plaintiffs filed a motion for summary judgment as to liability. The Government thereafter filed the present motion to dismiss. Plaintiffs' motion for summary judgment has been suspended. Discovery has been limited pending the outcome of the present motion.

Plaintiffs allege that they have been unlawfully exempted from entitlement to overtime compensation under section 7(a),[1] due to the NWS's adherence to regulations promulgated by the Office of Personnel Management ("OPM"),[2] the Government agency charged with administering the FLSA with respect to federal employees. *See id.* at § 204(f).

On October 25, 1983, OPM published final regulations that modified the criteria for determining whether a federal employee was exempt from coverage of the overtime provisions of the FLSA. 48 Fed.Reg. 49,494 (Oct. 25, 1983). These regulations stated in part "that any employee properly classified at GS–11 or above ... shall be presumed to be exempt" from the mandatory overtime provision of the act. 5 C.F.R. § 551.203(c) (1986) ("presumption regulation"). Agencies were permitted to request OPM to remove specific positions graded GS–11 or above from the exemption presumption. *Id.* at § 551.207. On August 30, 1985, OPM republished the regulations for implementation and they became effective on November 1, 1985. 50 Fed.Reg. 35,529 (1985).

Soon after the regulations took effect, their legality was challenged. In *American Fed'n of Gov't Employees, AFL–CIO v. Office of Personnel Management*, 821 F.2d 761 (D.C.Cir.1987) *("AFGE")*, the United States Court of Appeals for the District of Columbia Circuit vacated and invalidated 5 C.F.R. § 521.203(c) along with various other OPM regulations. The court held that because the presumption regulation shifted the burden of proving exemption from the employer to the employee, it was inconsistent with the FLSA. *AFGE*, 821 F.2d at 771.

On September 18, 1987, OPM issued an Interagency Advisory Group Memorandum advising personnel directors of other federal agencies of its concurrence with the Department of Justice's decision not to seek further review of the decision of the D.C. Circuit. OPM instructed agencies to apply the detailed exemption criteria that predated the presumption regulation in determining whether employees holding positions graded at GS–11 or above should be exempted from the overtime provisions of the FLSA. *See* Federal Personnel Manual System Letter ("FPM Letter") 5551–7 (July 1, 1975). By an interim rule published on January 22, 1988, 53 Fed.Reg. 1739, OPM confirmed its previous advice and formally withdrew the presumption regulation.

Plaintiffs allege that they were exempted from the overtime provisions of the FLSA after November 1985 solely by operation of the presumption regulation. Further, they allege that their nonexempt FLSA status which predated the invalid regulations has not been restored, nor have they been paid any FLSA compensation for the overtime hours they have worked since November

---

1. Section 7(a) provides that an employer shall compensate its "nonexempt" employees at a rate not less than one and one-half times their regular rate of pay for each hour employed in excess of 40 hours per week. This requirement does not apply to employees who are "exempt" from the Act's coverage because they are employed "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a).

2. *See generally Abundis v. United States*, 18 Cl.Ct. 657 (1989).

1985. Plaintiffs contend that neither the NWS nor its parent organization, NOAA, had any control over converting them to nonexempt status. Plaintiffs seek lost overtime wages from December 14, 1986 to the present.

Plaintiffs are in a bargaining unit represented by the National Weather Service Employees Organization ("NWSEO") and are covered by a nationwide collective bargaining agreement that became effective on July 12, 1988. Prior to that date, plaintiffs were covered by regional (eastern, central, southern, and western) agreements. All of the relevant agreements, current and regional, include all nonsupervisory employees and contain a negotiated grievance clause. None contain language specifically using the term "Fair Labor Standards Act" in the purpose provision or the enumerated exclusions.

Article 10 of the current collective bargaining agreement ("CBA") contains the grievance procedure. Section 1 reads in part:

> The purpose of this article is to provide for a mutually acceptable method for the prompt and equitable settlement of employee, Union and Management grievances over the interpretation and application of this agreement and other conditions within the bargaining unit subject to the control of management. Unless otherwise provided for, this procedure will be the sole procedure available to the Union, Management, or bargaining unit employees for resolving grievances.

Article 1, § 1 of the CBA defines "management" as "the National Weather Service." Article 10, § 1, of the national agreement incorporates by reference the definition of "grievance" provided in 5 U.S.C. § 7103(a)(9) (1988).[3] Article 10, § 1, also

enumerates 15 exclusions from the grievance procedure.

Article 11, § 7 reads in part: "The arbitrator shall limit his/her decision strictly to the application and interpretation of the provisions of this Agreement...."

None of the four regional agreements is presently in effect. The eastern, southern, central, and western regional agreements were collectively superseded in July 1988 by the national agreement. However, a portion of the claims raised in this case arose when the regional agreements were operative. These claims arise under the eastern, central and western regions only.

As with the national agreement, the eastern regional agreement limited grievances to "matters subject to the control of management." Also like the current nationwide agreement, the eastern regional agreement contained eight enumerated exceptions none of which specifically mention FLSA disputes.

Article 10, § 1(i) of the central regional agreement excluded grievances concerning "decisions of the OPM, CG or other regulatory agencies which apply to or impact on the NWS."

Article 9, § 1(K) of the western regional agreement explicitly excluded from the scope of the grievance procedure those complaints that involved "[i]nterpretation of federal law or any government-wide rule or regulation."

## DISCUSSION

The Government argues that, because FLSA disputes are not excluded from the grievance procedure, plaintiffs' claims must be resolved exclusively through the negotiated procedure, and therefore the court lacks jurisdiction over plaintiffs' complaint. The Government supports this by

---

**3.** Section 7103(a)(9) of the CSRA defines "grievance" as follows:

"[G]rievance" means any complaint—
(A) by any employee concerning any matter relating to the employment of the employee;
(B) by any labor organization concerning any matter relating to the employment of any employee; or
(C) by any employee, labor organization, or agency concerning—

    (i) the effect or interpretation, or a claim of breach, of a collective bargaining agreement; or
    (ii) any claimed violation, misinterpretation, or misapplication of any law, rule or regulation affecting conditions of employment[.]

citing § 7121(a)(1) of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 7101 *et seq.* (1988), which states that where a collective bargaining agreement provides for grievance procedures, "the procedures shall be the exclusive remedy for resolving grievances which fall within its coverage."

The Government relies heavily on *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.1990) (*en banc*), *cert. denied,* — U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). In *Carter,* the Federal Circuit held that the CSRA made grievance procedures in collective bargaining agreements the exclusive method for resolving FLSA overtime disputes between parties to those agreements unless the parties specifically provided otherwise. The Government also cites a decision of this court to support its contention that the plaintiffs' CBA does not specifically exclude FLSA disputes from the negotiated grievance procedure. *Adams v. United States,* 20 Cl.Ct. 542, 550 (1990).

Plaintiffs do not dispute that their FLSA claims are "grievances" under the CSRA. They do contend, however, that their disputes are excluded from their CBA. Regarding the national agreement, plaintiffs base their argument on Article 10, § 1, of the CBA: "The purpose of this article is to provide for a ... method for ... settlement of ... grievances over the interpretation or application of this agreement and other conditions within the bargaining unit subject to the control of management." Plaintiffs argue that the issue in their FLSA dispute, whether the plaintiffs are nonexempt from overtime provisions, is not "subject to the control of management" and is therefore outside the purview of the grievance procedure.

Plaintiffs also argue that even if an FLSA dispute of this nature is subject to the parties' current negotiated grievance procedure, the claims for back pay for the period prior to the effective date of the current agreement made by plaintiffs employed in the NWS's western and central regions should not be dismissed. Plaintiffs contend that these two regional agreements respectively exclude their FLSA claims from the CBA grievance procedures because the agreements do not apply to claims concerning "[i]nterpretation of federal law or any government-wide rule or regulation," and "decisions of the OPM, CG or other regulatory agencies which apply to or impact on the NWS."

On March 30, 1990, the Federal Circuit, sitting *en banc,* reversed a prior panel decision in *Carter v. Gibbs,* 883 F.2d 1563 (Fed.Cir.1989). In doing so, the court dismissed a lawsuit brought by several hundred Internal Revenue Service ("IRS") revenue officers and tax auditors for overtime pay allegedly due them under the FLSA. The IRS had determined that these employees were exempt from the FLSA's pay requirements and paid them in accordance with a rate provided in the Federal Employee Pay Act ("FEPA"), 5 U.S.C. § 5542(a)(2), which resulted in less overtime pay than under the FLSA, or no overtime pay at all.

Before reversal, *Carter* held that federal employees could bring overtime pay claims under §§ 7 and 16(b) of the FLSA either through the grievance procedure of a collective bargaining agreement or in federal court. In reversing the earlier decision, the *en banc* panel noted that the parties agreed that plaintiffs' overtime pay claims were not excluded from the grievance procedure of the CBA. The court concluded that § 7121(a)(1), the CSRA's exclusivity provision, precluded plaintiffs from obtaining judicial review of their overtime claims. The court found that the CSRA's "integrated scheme of administrative and judicial review" compelled the conclusion that the court should not imply an exception to the CSRA. *Carter,* 909 F.2d at 1455 (quoting *United States v. Fausto,* 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988)); *see generally Adams,* 20 Cl.Ct. at 549. The court emphasized that it was Congress' intent to keep pay issues within negotiated grievance procedures and that if parties to a CBA intend to exclude such matters from negotiated grievance procedures, they must specifically so provide. *Carter,* 909 F.2d at 1455. After *Carter,* the sole issue in this case is whether the relevant CBA excludes FLSA disputes from the negotiated grievance procedure.

Defendant relies on *Adams* to support its contention that the language of plaintiffs' CBA does not exclude FLSA disputes. 20 Cl.Ct. at 550. In *Adams*, this court dismissed a lawsuit by 288 current and former prevailing rate employees of the United States Army Corps of Engineers who sought environmental hazard, seniority, and night shift pay. *See* 5 U.S.C. § 5343(c)(4), (e), (f). There, the CBA excluded the following: "Questions involving application of published agency policies, provisions of law, regulations of the Department of the Army Corps of Engineers or regulations of appropriate authorities outside the Department of the Army." *Adams*, 20 Cl.Ct. at 545.[4]

After analyzing the Federal Circuit's decision in *Harris v. United States*, 841 F.2d 1097 (Fed. Cir.1988), and *Carter v. Gibbs*, the court in *Adams* concluded that "plaintiffs' pay claims are not specifically excluded from the [negotiated] grievance procedure" and therefore the negotiated procedure "is the exclusive remedy for resolving plaintiffs' pay claims". *Adams*, 20 Cl.Ct. at 550. Placing its decision in the context of other recent cases, the court stated that the "trend in this area of the law" is to find that "so long as plaintiffs have an avenue available in which to proceed on their pay claims ... that route is the exclusive forum and judicial review is foreclosed." *Id.*

*Adams*, however, is not controlling on the issue of whether the language of the CBA in this case excludes FLSA disputes. First, in *Adams*, the plaintiffs' claim alleged that the Department of Defense Wage Fixing Authority had incorrectly interpreted an amendment to the Prevailing Rate Systems Act of 1972, 5 U.S.C. §§ 5341–5349 (1988). Here, the plaintiffs' case involves the OPM's interpretation of the FLSA. This difference is important given the fact that plaintiffs in this case contend that their exempt status was not

"subject to the control of management" and thus beyond the scope of their grievance procedure. Second, the *Adams* court did not analyze any language similar to that limiting the grievance procedure to matters "subject to the control of management." Third, the *Adams* court did not specifically analyze language similar to that of the exclusion in the central agreement.[5] Fourth, although the *Adams* CBA did contain exclusion language similar to that of the western agreement,[6] the court did not specifically analyze that language in reaching its conclusion. Thus, it is necessary to independently analyze each of the limitations placed on the grievance procedure.

As a preliminary matter, the court notes that the determination of whether an agreement excludes actions brought here cannot be predicated on a pre-*Carter* understanding of the drafters' intent. It is apparent that the exclusions at issue *can* be construed in a way that embraces actions before this court. The exclusions in question were drafted before the *en banc* decision in *Carter*, however, and what the drafters of the agreements in question may have assumed with respect to the availability of judicial remedies before *Carter* may have colored the language chosen. The plain import of *Carter* is that such an exclusion cannot now be a matter of speculation—it must be explicit. Moreover, the court declines to adopt different standards for evaluating intent pre and post-*Carter*. That decision was not limited in effect to agreements subsequently drafted. It was a construction of language in the CSRA which this court must apply.

The National and Eastern Agreements

Based on the language of Article 10, § 1 of the CBA, plaintiff argues that an issue subject to the negotiated grievance procedure must concern a working condition

---

4. A prior version of the *Adams* CBA, which was not at issue in *Adams*, contained the language: "Questions involving interpretation or application of published Agency policies, provisions of law ..." *Adams*, 20 Cl.Ct. at 545 n. 7 (emphasis in *Adams* ).

5. The central agreement excluded claims relating to "decisions of the OPM, CG or other regulatory agencies which apply to or impact on the NWS."

6. The western agreement excluded claims relating to "[i]nterpretation of federal law or any government-wide rule or regulation."

"subject to the control" of the NWS. Plaintiffs contend that neither NWS nor NOAA had any control over converting them to nonexempt status. Plaintiffs refer the court to correspondence between NOAA and OPM in which OPM denied NOAA's request for waiver of the presumption regulation. All of the correspondence, however, predates the invalidation of the presumption regulation in *AFGE*, 821 F.2d at 771.

■ The plaintiffs' argument misses the point. Although it is true that their initial conversion to nonexempt status was beyond the control of management, reconversion of the plaintiffs to exempt status is now within the control of management. OPM has delegated to the employing agencies the duty to exempt from the overtime provisions of the FLSA any employee who meets the exemption criteria. 5 C.F.R. § 551.201. OPM simply issues supplemental interpretations or instructions to the employing agencies. OPM's role as administrator of the FLSA in the federal sector, 29 U.S.C. § 204(f), does not divest management of its authority and responsibility to make these determinations for each of its employees.

This court's ruling in *Abundis v. United States*, 18 Cl.Ct. 657 (1989), makes this clear. In *Abundis*, this court held that invalidation of the presumption regulation, 5 C.F.R. § 551.203(c), did not require automatic reconversion of employees to their preregulation status. Determinations of whether the conversion of employees to nonexempt status was legally correct necessitated "proof as to each plaintiff." *Id.* at 664. Such determinations raise local, fact-specific issues that are best suited to the grievance procedures provided for by the CBA.

■ Plaintiffs also argue that if this court dismisses their claims they run the risk that their grievances will also be dismissed by an arbitrator as outside the scope of the grievance procedure. Plaintiffs do not dispute, however, that their FLSA overtime claims are grievances within the meaning of § 7103(a)(9) of the CSRA. *Carter* clearly held that grievance procedures are the exclusive method for resolving FLSA overtime grievances unless the parties provide otherwise. In the event an arbitrator rules the issue non-grievable, plaintiffs have available an appeal to the Federal Labor Relations Authority. 5 U.S.C. § 7122.

Regarding the eastern regional agreement, plaintiffs make the same argument that they advanced with regard to the current national agreement. As with the national agreement, the eastern agreement contains eight enumerated exceptions that plaintiffs concede are not applicable. They rely instead upon the introductory sentence containing the phrase "matters subject to the control of management." The same analysis that counters plaintiffs' contention regarding the national agreement applies here.

The Central and Western Regional Agreements

Regarding the central and western agreements, plaintiffs contend that there is an enumerated exclusion that is broad enough to exclude FLSA matters from the negotiated grievance procedure. For the central agreement, plaintiffs contend that FLSA claims are excluded from the negotiated procedures by the exclusion of claims concerning "decisions of the OPM, CG, or other regulatory agencies which apply to or impact on the NWS." In support of this argument, plaintiffs state that NWS GS–11 employees were converted to exempt status on orders of OPM.

Here again, the decision of whether the plaintiffs are nonexempt is within the control of management. Although OPM converted the plaintiffs to exempt status, OPM is not now preventing management from making a new determination of each plaintiff's status. Moreover, as defendant argues, and the court agrees, the language of the exclusion is too broad to overcome the presumption recognized by *Carter* that these claims are "grievances" subject to the negotiated procedures of the CBA.

■ For the western agreement, plaintiffs argue that FLSA claims are excluded from the negotiated procedures by the ex-

**490**

clusion of claims concerning "[i]nterpretation of federal law or any government-wide rule or regulation." Plaintiffs contend that it would not be unreasonable to read their complaint as raising, *inter alia*, a question involving the interpretation of a provision of law, i.e., the interpretation of the OPM regulation.

The language of this exclusion is very similar to that relied on by the plaintiffs in the *Adams* case. In that case the CBA contained the following language: "Questions involving application of published agency policies, provisions of law ... or regulations of appropriate authorities ... shall not be subject to the grievance procedure." The *Adams* court did not analyze the literal language of the exclusion or question the intent of the drafters, but rather relied on a broad interpretation of *Carter* to determine that the plaintiffs' claims were within the scope of the grievance procedure and to dismiss plaintiffs' claims. *Adams*, 20 Cl.Ct. at 545 & n. 7, 547, 549–50.

Again, such broad exclusions give no indication as to whether the parties intended to exclude FLSA claims from the negotiated procedures. Furthermore, the exclusion addresses *interpretation* of federal law and regulations, and plaintiffs' claim does not dispute interpretation of federal law or regulations, but rather their *application*. The statutory definition of "grievance" recognizes the distinction between misinterpretation and misapplication. 5 U.S.C. § 7103(a)(9)(c)(ii). OPM regulations confer on the agency the duty of applying the FLSA exemptions to its employees. 5 C.F.R. § 551.201.

After examining the relevant portions of the current national agreement and predecessor regional agreements, the court finds that the parties did not specifically exclude FLSA matters from the grievance procedure. Therefore, the claims are "grievances" within § 7103(a)(9) of the CSRA. Accordingly, the exclusivity provision of the CSRA, § 7121(a)(1), provides that the grievance procedure is the exclusive remedy for resolving plaintiffs' pay claims.

## CONCLUSION

For the reasons expressed above, the court grants defendant's motion to dismiss for lack of jurisdiction. The Clerk is directed to dismiss the case. No costs.